**FEUCHTWANGER CORP., Appellant,**

v.

**LAKE HIAWATHA FEDERAL CREDIT UNION, Appellee.**

No. 12834.

United States Court of Appeals
Third Circuit.

Argued Sept. 21, 1959.

Decided Nov. 20, 1959.

Harry A. Margolis, Newark, N. J. (Max L. Rosenstein, Newark, N. J., on the brief), for plaintiff-appellant.

Henry Milberg, Jersey City, N. J. (Milberg & Milberg and Samuel Milberg, Jersey City, N. J., on the brief), for defendant-appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from a judgment denying the demand of the assignee of a seller of certain machinery for a sum of money held in escrow for release to the assignee on compliance with conditions stated in the escrow agreement. Federal jurisdiction is based upon diversity of citizenship and all relevant transactions occurred in New Jersey.

A doubt concerning federal jurisdiction must be resolved before the merits of the controversy can be reached. This suit is by a New York corporation against a federally incorporated credit union. Does the diversity jurisdiction of the federal courts extend to such a case?

Lake Hiawatha Federal Credit Union is a corporation created under and in accordance with the provisions of the Federal Credit Union Act. 12 U.S.C.A. §§ 1751–1772. Such a credit union is a membership corporation described by the statute as "a cooperative association * * * for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes". § 1752. Membership in an individual credit union is by statute "limited to groups having a common bond of occupation, or association, or to groups within a well-defined neighborhood, community, or rural district". § 1759. Consistent with the statute, the federal charter of the present credit union specifies and limits its place of business and its membership. Section 2 of the charter provides that "[t]his credit union will maintain its office at Lake Hiawatha, New Jersey and will operate in the following territory Lake Hiawatha, New Jersey". Section 5 stipulates that "[t]he field of membership will be limited to those having the following common bond of association, occupation or residence: permanent residents of and those working in Lake Hiawatha, New Jersey; employees of this credit union; members of their immediate families; and organizations of such persons".

Thus, the statute and the charter combined to make this a peculiar-

ly local institution of a single community in the state of New Jersey. However, the Federal Credit Union Act itself says nothing about the citizenship of corporations created under it. The judge-made rule which for diversity purposes attributes to a corporation citizenship in the state of its incorporation simply does not apply to a corporation not chartered by any state. In these circumstances, it is suggested that localization of a federal corporation is in itself and without more an acceptable basis for finding citizenship for diversity purposes.

Insofar as the citizenship concept is applicable at all to a corporation, its invocation to relate such a membership corporation as we have here to the place where its members live or work and its business is required to be transacted is logical. Moreover, local bias in favor of local persons and institutions in controversies with strangers, a principal justification for diversity jurisdiction, is more likely to be present in the case of a corporation thus localized in fact than one which is connected with the state only in the formal sense of having been incorporated there. If citizenship is to be attributed to any corporation for diversity purposes, it makes sense to apply it in this situation.

In early cases which involved federally chartered banks federal courts were disposed to find two separate bases of federal jurisdiction. First, federal question jurisdiction was thought to attach merely because a corporation was federally chartered. Second, a national bank was regarded as a citizen of the place where it did business for purposes of diversity jurisdiction. As the Supreme Court put it in Petri v. Commercial National Bank, 1892, 142 U.S. 644, 648, 12 S.Ct. 325, 326, 35 L.Ed. 1144, "[s]uits by or against national banks might therefore be brought or removed upon the ground of diverse citizenship, or of subject-matter". However, in the 1880's concern to reduce the unmanageable and rapidly growing jurisdiction of the federal courts[1] resulted in legislation eliminating federal question jurisdiction based merely on federal incorporation and, at the same time, making certain that diversity jurisdiction remained possible by expressly providing, as the courts had already held,[2] that such a corporation should be deemed a citizen of the state of its location. 24 Stat. 552, now substantially reenacted in 28 U.S.C. § 1348. In brief, "[s]o far as the mere source of its incorporation rendered suits to which a national bank might be a party, cognizable by the * * * [federal courts], that was taken away, but the jurisdiction which those courts might exercise in such suits when arising between citizens of different states * * * remained unchanged". See Petri v. Commercial National Bank, supra, 142 U.S. at page 649, 12 S.Ct. at page 326. This history was recognized and respected in Bankers' Trust Co. v. Texas & Pacific R. Co., 1916, 241 U.S. 295, 36 S.Ct. 569, 60 L.Ed. 1010, where the Supreme Court held that an interstate railroad chartered by the United States was not a citizen of any state for diversity purposes, but at the same time was careful to distinguish this situation from that of a federal corporation, the activities and operations of which were confined to a single state.

Recently, a district court, facing in the case of a federal savings and loan association the very jurisdictional problem we have here with a federal credit union, concluded that localization of activity within a particular state sufficed to make a federal corporation a citizen of that state. Elwert v. Pacific First Federal Savings & Loan Ass'n, D.C.D.Or. 1956, 138 F.Supp. 395. Several earlier cases involving joint stock land banks seem to look the other way. Dallas Joint Stock Land Bank v. American Employers' Ins. Co., D.C.N.D.Tex.1940, 35 F.Supp. 927; First Carolinas Joint Stock Land

---

1. See Frankfurter and Landis, The Business of the Supreme Court, 1927, 94-95.

2. Orange Nat. Bank v. Traver, C.C.D.Or. 1881, 7 F 146, 149; Manufacturers' Nat. Bank of Chicago v. Baack, C.C.S.D.N.Y., 1871, 16 Fed.Cas. p. 671, No. 9,052.

Bank of Columbia, S. C. v. Page, D.C. M.D.N.C.1932, 2 F.Supp. 529; First Carolinas Joint Stock Land Bank of Columbia v. New York Title & Mortgage Co., D.C.E.D.S.C.1932, 59 F.2d 350. However, the foregoing analysis persuades us that the position of the Elwert case is sound.

In addition to the considerations already advanced, we are mindful that the present direction of public policy is toward greater recognition of local corporate activity as equivalent to citizenship for diversity purposes, albeit the principal aim of legislation reflecting that policy is to restrict federal jurisdiction. Specifically, the most recent amendment of Section 1332 of Title 28, approved July 25, 1958, too late to affect this suit which was filed October 31, 1957, makes a corporation for diversity purposes a citizen not only of the place of its incorporation but also of the state where its principal place of business is located. 28 U.S.C. § 1332(c). Thus, for the future, localization less extreme than we have in this case will suffice to establish corporate citizenship in the administration of diversity jurisdiction.

All circumstances considered we are satisfied that the court below was right in accepting this suit as within diversity jurisdiction. This brings us to the merits of the case.

The controversy arose out of a sale of machinery consisting of a four color offset press, a gluing attachment, and trimming and die-cutting units, all to be combined in a single structure which would, in an integrated operation, print and glue sheets, punch holes in them and cut them to size so that the finished product would duplicate a submitted sample of "V-Mail". The sample was a printed, shaped and glued sheet designed to serve as a mail order form for the purchase of merchandise and also to fold into an envelope addressed to the mail order seller and ready for sealing. Holes, like those in sheets for use in ring binders, also appeared near one margin. The particular size and somewhat irregular shape of the sheet adapted it to its special purpose.

The buyer paid the greater part of the price upon the delivery of the press alone. The unpaid balance, $11,000, was covered by an escrow agreement in which a third-party, the defendant Lake Hiawatha Federal Credit Union, promised the plaintiff, as assignee of the seller, as follows:

"We hereby certify that we are holding in escrow the sum of $11,-000.00, the balance of the money due * * * [seller] for the Milton-4-color press, serial No. 175–035, until such time that the above press produces the V-Mail attached hereto with the die-cutting and gluing units attached to the above machine."

* * * * * *

" * * * This money will be paid to you when the installation as above is completed."

When all the units had been delivered and assembled a dispute arose between the buyer and seller concerning their integrated operation. In these circumstances the defendant refused to pay the $11,000 to seller's assignee and this suit followed. The jury returned a verdict for the defendant and the plaintiff has appealed from the judgment entered on that verdict.

The appellant urges that the trial court erroneously permitted the defendant to show, and the jury to consider and to be influenced by, alleged shortcomings of the machinery which were not covered by or relevant to the condition stated in the escrow agreement. However, in charging the jury the court clearly and properly explained the scope of the present controversy and the controlling effect of the provisions of the escrow agreement. A portion of the charge reads as follows:

" * * * So what you are to consider is whether or not the conditions which are contained in the letter of the Lake Hiawatha Federal Credit Union to Feuchtwanger were carried out.

" * * * Only those conditions which are expressly stated in this

letter affect the right of the Feucht-wanger Corporation to recover the $11,000 placed in escrow for them, * * *. And so really we are not concerned about whether * * * [seller] has the right to sue * * [buyer]. We are not concerned with that. That would be a separate matter entirely. We are only concerned with whether or not the Feucht-wanger Corporation now is entitled to the delivery of that $11,000, and that depends completely upon whether the condition contained in the letter to the Feuchtwanger Corporation from the Lake Hiawatha Federal Credit Union has been carried out; * * *."

"It becomes then a question of fact for you to determine whether or not that particular condition has been fulfilled, and that is the only thing with which you are concerned; * * *."

This instruction makes explicit the very delimitation of the issue on trial which, in appellant's view, the trial court disregarded. Appellant's point, therefore, must be narrowed to a contention that, although the trial judge clearly stated the limited scope of the inquiry to the jury, he permitted the jury to hear and consider prejudicial testimony concerning the performance of the machinery which was irrelevant to the issue on trial.

We think this objection is not well taken. Plaintiff's own case in chief included testimony that by a stated date all of the machinery had been delivered, assembled and integrated so that it functioned as "an operating unit". In addition plaintiff's witnesses testified that a test run was made during which the integrated structure satisfactorily produced V-Mail like the sample. Since plaintiff was entitled to payment of the fund held in escrow only when the "press produces the V-Mail attached hereto with the die-cutting and gluing units attached to the above machine", we think this attempted proof that the integrated machinery accomplished the specified result was essential to plaintiff's recovery.

Wolverine Glass Co. v. Miller, 1924, 279 Pa. 138, 123 A. 672. Cf. Wheeling Stamping Co. v. Birdsboro Steel Foundry & Machine Co., 3 Cir., 1957, 245 F.2d 752. In any event, such having been the scope of plaintiff's own evidence, plaintiff cannot complain that evidence which refutes its showing is irrelevant.

We next examine the questioned evidence in the light of the foregoing rationalization. There was defense testimony, directly refuting plaintiff's testimony, that the test run was in fact unsatisfactory and that seller was so advised at the time. It was testified that in the attempted integrated operation of the machinery shortly after its installation sheets were not cut to uniform size and holes were punched at places which varied from sheet to sheet rather than at the specific places indicated on the sample. We think an eccentric production of sheets of different sizes with holes punched in varying positions was not a performance of the stated condition.

There was an additional showing that as a result of this failure of the integrated operation the buyer had to use the printing, cutting and gluing units separately in three independent operations. Over objection the defendant presented testimony that this separate use of the units was a much slower series of operations, so much so that it cost the buyer more to produce the sheets than the price for which he had agreed to sell the completed V-Mail. Appellant has argued to us as if it were the burden of the above testimony that the integrated operation proved slower and more costly than anticipated, a contingency not covered by the agreement. But it was the slowness and the costliness of the separate operations, said to have been necessitated by the failure of integrated operation, to which the testimony in dispute was addressed. We are satisfied that the line of defense was fairly related to the refutation of plaintiff's testimony that the integrated operation satisfactorily produced sheets like the sample. Moreover, it was relevant and proper to supplement this refutation by a showing that this

malfunctioning was a matter of consequence, necessitating an alternative procedure for commercial production of V-Mail sheets which was much slower and prohibitively costly.

Beyond the matters already discussed, appellant complains that other evidence admitted over objection was irrelevant and prejudicial. The contract for the sale of the machinery in question and other documents involved in that transaction were received in evidence. There was proof of the agreed delivery dates and tardiness in delivery. There was additional testimony as to the dealings between buyer and seller. While much of this evidence was not relevant to the point in controversy, we are not persuaded that it presented the seller's conduct in such an unfavorable light that a jury, correctly instructed as to the narrow issue to be decided, would be biased against the plaintiff or inclined to use extraneous considerations as a basis of decision.

Finally, appellant complains that the trial judge refused requests for instructions which would have explained the limited significance and effect of the condition stated in the escrow agreement. The court read the brief text of the agreement to the jury but did not undertake to say what would or would not satisfy the stated condition. We do not regard the phrase, "until such time as the above press produces the V-Mail attached hereto with the die-cutting and gluing units attached to the above machine" as so technical, or abstruse, or difficult to apply to the evidence in the case that failure to explain its meaning should be regarded as failure to give the jury assistance needed for arriving at a fair and intelligent verdict.

No other matter presented on appeal requires detailed discussion. We have examined the entire course of the trial including the rather frequent and occasionally colorful interpositions by the trial judge, but without finding reversible error. Cf. Groce v. Seder, 3 Cir., 1959, 267 F.2d 352.

The judgment will be affirmed.