Irven L. CRUM and F. Alfred
Fleischut, Plaintiffs,

v.

VETERANS OF FOREIGN
WARS, Defendant.

Civ. A. No. 80–231.

United States District Court,
D. Delaware.

Dec. 30, 1980.

William H. Uffelman, Biggs & Battaglia, Wilmington, Del., for plaintiffs.

Thomas J. Allingham, II, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This is a motion to remand an action removed pursuant to 28 U.S.C. § 1441 from the Court of Chancery of the State of Delaware in and for New Castle County. Because this Court agrees with plaintiffs' claims that neither a federal question nor diversity of citizenship exists, the motion to remand will be granted.

The action stems from a dispute about the voting procedures needed to effect a major change in the composition of defendant organization, Veterans of Foreign Wars of the United States ("VFW").[1] In August, 1978, the VFW voted to amend its bylaws to permit admission of women. Passage of the amendment required a two-thirds majority of members present at the National Convention. Plaintiffs contend that the change should have been proposed in the form of a referendum on the organization's constitution, a procedure that demands a three-fourths vote of all of VFW's active members. They assert that rejection of the referendum format denied them a right to vote guaranteed by the VFW's constitution. Defendant, in removing the case, describes the issue as a federal one because the VFW is a federally chartered corporation whose governing rules are authorized by federal statute (36 U.S.C. § 114) and should be interpreted by federal courts. The VFW further asserts that it should be regarded as a Missouri citizen because its principal place of business is in Kansas City. For purposes of federal jurisdiction, Missouri citizenship would yield complete diversity with the named plaintiffs, Irven L. Crum of New Jersey and F. Alfred Fleischut of Delaware.

### Diversity Jurisdiction

The VFW was organized by act of Congress as a non-stock federal corporation devoted to veterans assistance and other patriotic goals. See 36 U.S.C. § 113 (statement of purposes). The organization operates Posts and subsidiary corporations in many states and has over 1.6 million members. Although its reach is national, its headquarters have been, for more than twenty-five years, in the VFW building at Kansas City, Missouri. Defendant describes the site as its "principal place of business." This Court must decide whether the VFW's

---

1. The facts are taken from the Court of Chancery Complaint submitted as Exhibit I with defendant's Petition for Removal.

headquarters' long-term residence constitutes citizenship in the State of Missouri for purposes of original federal jurisdiction under 28 U.S.C. § 1332, the general diversity statute. If it does, then removal jurisdiction may be exercised under 28 U.S.C. § 1441(a).[2]

Throughout most of this century, the general rule regarding the diversity status of federally chartered corporations has held them to be citizens of the United States, but not of any particular state.[3] *See Bankers Trust Co. v. Texas & Pacific Ry. Co.*, 241 U.S. 295, 309, 36 S.Ct. 569, 572, 60 L.Ed. 1010 (1916); *Monsanto Co. v. TVA*, 448 F.Supp. 648 (N.D.Ala.1978); *Rice v. Disabled American Veterans*, 295 F.Supp. 131 (D.D.C.1968); *Harris v. American Legion*, 162 F.Supp. 700 (S.D.Ind.), *aff'd*, 261 F.2d 594 (7th Cir. 1958). The VFW argues, however, that judicial and legislative innovations have created exceptions to this doctrine that permit it to adopt Missouri citizenship.

In principle, caselaw can support the notion of judicially-created state citizenship. Defendant points to cases where state citizenship was granted to federal corporations whose activities were "localized" in one state. Most notable is a ruling by the Third Circuit Court of Appeals, *Feuchtwanger Corp. v. Lake Hiawatha Federal Credit Union*, 272 F.2d 453 (3d Cir. 1959). In that case diversity jurisdiction was held proper because a federally-created local credit union could be a New Jersey citizen. This organization escaped the rule of national citizenship because its essential nature was local. The governing statute described credit unions as "limited to groups having a common bond of occupation or association, or to groups within a well-defined neighborhood, community, or rural district." 12 U.S.C. § 1759. A federal forum was found

proper because localization could provoke the biases that are the standard rationale for federal diversity jurisdiction. *Lake Hiawatha, supra*, 272 F.2d at 454–56. *Accord Elwert v. Pacific First Federal Savings & Loan Assoc.*, 138 F.Supp. 395 (D.Or.1956) (statute and charter "localized" federal savings and loan bank).

These cases are not persuasive on this issue for the facts are, in essential points, quite at variance with those of the instant case. In the *Lake Hiawatha* and *Elwert* statutes, Congress had recorded its intention to create local organizations. By contrast, the statute authorizing creation of the VFW conveys a picture of a national organization. The original incorporators represented 15 different states and the District of Columbia. 36 U.S.C. § 111. The statute grants the federal parent corporation the power to regulate "*subordinate State and Territorial subdivisions*." 36 U.S.C. § 114 [emphasis supplied]. The designation of corporate purposes further sounds the national theme; the VFW will "maintain true allegiance to the Government of the United States of America." 36 U.S.C. § 113. Defendant has also failed to offer facts concerning its operations which might permit the Court to characterize the organization as "a peculiarly local institution." *Lake Hiawatha, supra*, 272 F.2d at 455. On the contrary, what appears in the parties' submissions establishes that there is a major office in Kansas City and Posts or chapters in New Jersey and Delaware where plaintiffs reside. This information highlights the nation-wide extent of the VFW and supports a finding that, like an interstate railroad or the American Legion, the VFW is a United States citizen not likely to suffer from parochial bias in the state courts due to lack of local acceptance.

---

2. (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441.

3. An exception to this rule exists where the federal incorporating statute characterizes the corporation as a "body corporate" of a particular state. *See Patterson v. American Nat'l Red Cross*, 101 F.Supp. 655 (S.D.Fla.1951).

Defendant's statutory argument would require this Court to apply the "principal place of business" criterion of 28 U.S.C. § 1332(c) [4] to federal corporations as well as to state corporations. Some authority appears, at first blush, to support this proposition.[5] Only one court has actually applied section 1332(c) to a federal corporation. In a rather cryptic opinion, Montana citizenship was assigned to a federally chartered Indian tribe whose "only place of business" was in that state. *Enterprise Electric Co. v. Blackfeet Tribe*, 353 F.Supp. 991, 992 (D.Mont.1973). In contrast is *Monsanto Co. v. TVA*, 448 F.Supp. 648 (N.D.Ala.1978), where the more complex case of the Tennessee Valley Authority persuaded the court to avoid treating the federally chartered corporation as a state citizen. Because TVA operated in several states it was held not to meet the localizing test of *Lake Hiawatha*. *Monsanto Co., supra*, 448 F.Supp. at 651. Section 1332(c) was also inapplicable. Although TVA's authorizing statute required that its "principal office" be in Muscle Shoals, Alabama, this location did not constitute the "principal place of business" contemplated in the diversity provision. *Id.* at 650.

■ The *Monsanto* approach fits this case as well. The existence of multi-state operations makes the *Enterprise Electric* court's "principal and only place of business" analysis as inapposite to the VFW as is the localization theory of *Lake Hiawatha*. Without reaching the question whether section 1332(c) is generally capable of conferring state citizenship upon federally chartered corporations,[6] I hold that the mere allegation of residence of a nation-wide group's organizational headquarters does not establish a "principal place of business" for purposes of jurisdictional citizenship.

This holding follows from the Third Circuit Court of Appeals method of determining "principal place of business." In *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3d Cir. 1960), Judge Goodrich rejected the "nerve-center test" which located the principal place of business where policy decisions were made. Instead, he adopted an "operational test" which looked to the state where the corporation had its "headquarters of day-to-day corporate activity and management." *Kelly, supra*, at 854. Facts significant to this analysis include locations of the personnel, equipment, and real estate of the corporations and locations of executive and high-level management's daily decisions. *See, e. g., Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140 (3d Cir. 1972); *Holman v. Carpenter Technology Corp.*, 484 F.Supp. 406 (E.D. Pa.1980); *United Industrial Corp. v. Gira*, 204 F.Supp. 410 (D.Del.1961).

■ In the cited cases, the courts' task was to determine which of two states harbored the activity most significant for corporate operations. To adapt this analysis to the problem of federal corporations, this Court must determine which sphere—a state or the United States—may best be characterized as the operational locale of

---

4.  (c) For purposes of this section and section 1441 of this title [removal], a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.
    28 U.S.C. § 1332 *as amended* July 25, 1958, Pub.L. 85–554, § 2, 72 Stat. 415.

5.  *See Lake Hiawatha, supra*, 272 F.2d at 456 (with new § 1332(c), "localization less extreme than we have in this case will suffice to establish corporate citizenship"); *Enterprise Electric Co. v. Blackfeet Tribe*, 353 F.Supp. 991, 992 n.5 (D.Mont.1973); *Latch v. TVA*, 312 F.Supp. 1069, 1072 (N.D.Miss.1970) (*dictum*). *See generally* Moore & Weckstein, *Corporations and Diversity of Citizenship Jurisdiction: A Su-*preme Court Fiction Revisited, 77 Harv.L.Rev. 1426, 1438 (1964) (section 1332(c) might, but probably ought not to be a means of granting state citizenship to federal corporations).

6.  A strong case would have to be made that Congress intended to permit section 1332(c) to be a basis for granting state citizenship to federal corporations. This is so because the result is to increase the number of litigants with access to federal courts. Such a result is at odds with Congress' plan to *reduce* diversity jurisdiction by making complete diversity more difficult to attain for corporations with citizenship in more than one state. *See* S.Rep. No. 1830, 85th Cong., 2d Sess., [1958] U.S.Code Cong. & Ad.News, pp. 3099, 3101.

the Veterans of Foreign Wars. Unfortunately, a description of the VFW's operations has not been provided. The mere existence of a headquarters at Kansas City does not establish that "day-to-day" operational decisions are taken there or that the greater part of the VFW's property and personnel is located there. While an allegation of the location of a principal place of business may ordinarily establish citizenship, the bare assertion cannot suffice when citizenship itself is an issue. In such cases, the party claiming federal jurisdiction bears the burden of proof of jurisdictional facts. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Quaker State Dyeing & Finishing Co., supra*, 461 F.2d at 1143. If the court finds the record an inadequate basis for exercise of its power, then it may not act. *See City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Louisville & N.R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). On this record there is no support for a finding that the VFW's "principal place of business" is in Kansas City or in any other individual state. It cannot, therefore, be denominated a state citizen for diversity purposes.

### Federal Question Jurisdiction

The VFW has also argued that this Court should hear the case under the "federal question" removal provision: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). It is concluded, however, that although the VFW is a federally chartered corporation, the controversy as to whether its constitution or bylaws controls a given set of facts does not arise under federal law for jurisdictional purposes.

■ Congress' contribution to the internal regulation of the VFW consists of the grant of power "to adopt, amend, apply, and administer a constitution, bylaws, and regulations to carry out its purposes, not inconsistent with the laws of the United States or of any State;" 36 U.S.C. § 114.[7] In accordance with this mandate, defendant promulgated the constitution and bylaws whose purported conflict is the subject of this suit.[8] Defendant argues that these rules are comparable to regulations promulgated by federal agencies for the governance of federal corporations in the banking industry. Other courts have held in the context of the banking industry that interpretation of such regulations presents a federal question. *See Murphy v. Colonial Federal Savings & Loan Association*, 388 F.2d 609 (2d Cir. 1967); *Gibson v. First Federal Savings & Loan Association*, 347 F.Supp. 560 (E.D.Mich.1972), *aff'd* 504 F.2d 826 (6th Cir. 1974).

The cases do not parallel the VFW's situation. In *Murphy*, Judge Friendly found that a problem of corporate voting procedure "which requires a fleshing out of the [Federal Home Loan Bank] Board's regulations, is one of federal law." *Murphy, supra*, 388 F.2d at 611. The regulations in question emanated directly from a federal instrumentality (the Board) and established a detailed system of corporate law appropriate to federal savings and loan associations.[9] Similarly, the United States Supreme Court has ruled that interpretation of a uniform bill of lading prescribed by the Interstate Commerce Commission is a federal question. Although the bill itself was issued by a private party, its form came

---

7. No pleading or argument suggests that there is a conflict with state or federal law or that the statutory provisions incorporating the VFW are in need of interpretation or application.

8. Copies of the constitution and bylaws are not in the record.

9. *See* 12 C.F.R. §§ 500.1–589.3. This title comprises some 500 pages of regulations pertaining to the Board and to the federal banking corporations chartered under its authority. The extent to which it controls the governance of such institutions may be gauged by considering sections 544.1–544.7 which prescribe complete forms of charters and bylaws as well as procedures for amending them.

from the federal government and so, the Court held, should its meaning. *Illinois Steel Co. v. Baltimore & Ohio R.R.*, 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259 (1944).

Federal influence on the substance of the VFW's constitution and bylaws appears nugatory beside *Murphy* and *Illinois Steel*. Neither Congress nor any agency prescribes the rules for internal voting. The pertinent statute authorizes amendment of the constitution and bylaws, 36 U.S.C. § 114, but the substantive provisions whose "fleshing out" will yield a solution to this controversy are the bylaws and constitution enacted by private action of the VFW, not by a government instrumentality. As plaintiffs have pointed out, the private nature of the VFW's membership rules was emphasized in a federal decision that the old policy of excluding women did not constitute state action for purposes of a federal constitutional claim. *Stearns v. Veterans of Foreign Wars*, 394 F.Supp. 138 (D.D.C.1975), aff'd mem., 527 F.2d 1387 (D.C.Cir.), *cert. denied*, 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 83 (1976).

While the banking cases do not support finding a federal question in this case, they do not negate one either. The decision that this Court lacks jurisdiction is dictated by two other considerations: 1) there is some analogous caselaw denying jurisdiction; 2) the history of 28 U.S.C. § 1349 suggests a congressional distaste for this kind of federal question.

In *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), the Supreme Court refused to find a federal question in the interpretation and enforcement of a contract between two federal banks. Justice Cardozo regarded the contract as an obligation arising from and enforceable by state law. The same analysis applies here. If a bank's contract is non-federal even though the power to make contracts comes from a federal charter, then the VFW's constitution and bylaws are non-federal even though authority to promulgate them derives from a federal

statute. *See Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe*, 370 F.2d 529 (8th Cir. 1967) (claim under bylaws of federally incorporated tribe is not federal question); *Federal Land Bank of Columbia v. Cotton*, 410 F.Supp. 169 (N.D.Ga.1975) (federal corporation's mortgage does not present federal question although, in other respects, the corporation is heavily federally regulated). While the analogy between corporate bylaws and a corporation's contract is not perfect, these cases nonetheless stand for a proposition that is applicable here: When federal authority is a step removed from the instrument sought to be enforced, then that instrument is not federal law. On this basis the VFW's constitution and bylaws are not federal law for jurisdictional purposes.

The second consideration militating against federal question jurisdiction is the statute that denies district courts "jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock." 28 U.S.C. § 1349. Authorities are unanimous in ruling that this provision merely eliminates the unadorned fact of federal incorporation as a jurisdictional ground; it does not preclude basing suit by or against a federal corporation on some other federal question. *See, e. g., Murphy v. Colonial Federal Savings & Loan Association*, 388 F.2d 609, 612 (2d Cir. 1967); *Feuchtwanger Corp. v. Lake Hiawatha Federal Credit Union*, 272 F.2d 453, 455 (3d Cir. 1959). I find, however, that an attempt to identify as a federal question the interpretation of a corporation's constitution and bylaws which are federal only in their authorization is no different from basing jurisdiction on the simple fact of federal incorporation.

Section 1349 was passed to lighten the case load of the federal courts which had labored under the necessity of hearing any case by or against a federally incorporated entity.[10] This jurisdiction originated

---

10. *See, e. g., Bankers Trust Co. v. Texas & Pac. Ry. Co.*, 241 U.S. 295, 36 S.Ct. 569, 60 L.Ed. 1010 (1916); F. Frankfurter & J. M. Landis, *The Business of the Supreme Court*, 272–73 (1927),

with *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), where Chief Justice Marshall ruled that a federal question was implicit in suits to which a federally chartered bank was party. He reasoned that the powers of an artificial entity must always be at issue, whether expressly considered or not. Since the power to sue and be sued derives from the bank's federal charter, this issue always entails resort to federal law. *Osborn, supra,* 22 U.S. (9 Wheat.) at 823–24. Chief Justice Marshall addressed this exposition to the Constitution's "arising under" clause. He held that, in principle, Congress had power to confer jurisdiction based on federal incorporation. Fifty years later, however, his reasoning was applied to the newly-enacted federal question removal statute. In the *Pacific Railroad Removal Cases,* 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), the Supreme Court found federal incorporation enough, by itself, to put cases involving railroad companies into federal court. In effect, Congress was held to have granted the courts the full measure of constitutional jurisdiction envisioned in *Osborn.* This in turn led to a deluge of litigation which was stemmed by passage of section 1349.

It is against this backdrop that the present case must be viewed in order to determine whether or not the federal question claim is such a one as Congress intended to forbid under section 1349. Defendant argues that the federal question arising from its constitution and bylaws is distinct from the fact of federal incorporation. This would be correct if those internal regulations were themselves federal law. It has already been held that they are not. The question, then, is federal only in that it concerns rules authorized by a federal statute. This line of argument is the precise analogue of the *Osborn/Pacific Railroad Removal* logic: the power to sue or to make a contract *or to enact a constitution and bylaws* was conferred by federal law;

C. A. Wright, *Federal Courts,* 64–65 (3d ed. 1976).

11. *Cf. Dawson v. Chrysler Corp.,* 630 F.2d 950, 962 (3d Cir. 1980) (affirming "with uneasiness"

therefore a suit or contract right *or bylaws interpretation* arises under federal law in that it results from an exercise of power conferred by the statute of incorporation. This is the reasoning forbidden by section 1349. The Court must conclude that no federal question is created by interpretation of the VFW's bylaws and constitution.

Defendant points out that by failing to find a federal question in this case the Court relegates the issue to state law. As a consequence, different states' corporation laws may require different and conflicting interpretations of the same rules. In effect, the VFW falls between two jurisdictional chairs: it is sufficiently national not to qualify as a state citizen; on the other hand, its rules are not sufficiently governmental to present questions of federal law. The problem is undeniable. Nevertheless, this is not a case of discretionary exercise of jurisdiction. Today's holding is that Congress has not conferred on this Court power to entertain the case presented.[11]

An Order will issue granting plaintiffs' petition for remand to the Delaware Court of Chancery.

a diversity decision that would permit different states' juries to apply different safety standards to nationally used car designs; rectifying the problem held to be Congress' concern).