Christopher L. BURTON and Robert L. Burton, d.b.a. CLB Productions, a partnership, Plaintiffs,

v.

UNITED STATES OLYMPIC COMMITTEE, a federally chartered corporation, Defendant.

No. CV 83–3088 MRP.

United States District Court, C.D. California.

Nov. 1, 1983.

Barash & Hill, Los Angeles, Cal., for plaintiffs.

Latham & Watkins, Thomas M. Mustin, Los Angeles, Cal., Beveridge, DeGrandi & Kline, Richard G. Kline, Edward T. Colbert, Joseph D. Lewis, Washington, D.C., for defendant U.S. Olympic Committee.

## OPINION

PFAELZER, District Judge.

Plaintiffs initially filed this action in the Superior Court of the State of California for the County of Los Angeles, from which it was removed by defendant United States Olympic Committee ("USOC"). Thereafter, plaintiffs filed this motion to remand the matter to the state court pursuant to 28 U.S.C. § 1447(c).

The action arises out of a contract executed on or about October 26, 1979, between Christopher and Robert Burton, doing business as CLB Productions, and the USOC, a federally chartered corporation. The contract designated Christopher Burton as "An Official United States Olympic Committee Sculptor for the 1980 Quadrennial Olympic Games" and related to the production, sale and distribution of a sculpture created by CLB Productions. Plaintiffs allege causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent infliction of emotional distress. They seek damages in excess of $10,000, exclusive of interest and costs, as well as equitable relief.

After having read and considered the papers filed and having heard the argument of the parties, the court has concluded that because the parties are not of diverse citizenship, and no federal question is presented, the court is without jurisdiction. The motion to remand must therefore be granted.

## I. DIVERSITY JURISDICTION

The USOC, in removing this case pursuant to 28 U.S.C. § 1441, alleges that plaintiffs are citizens of California, and that the USOC has its principal place of business in Colorado Springs, Colorado. The USOC contends, as a consequence, that this court has original jurisdiction pursuant to 28 U.S.C. § 1332.[1] For the purpose of the motion, plaintiffs do not dispute that the USOC has its principal place of business in Colorado, but argue that the "principal place of business" criterion contained in 28 U.S.C. § 1332(c) does not apply to federally chartered corporations. They further contend that since the USOC is not "localized" in Colorado, it may not be deemed to be a citizen of that state. Plaintiffs conclude, accordingly, that the USOC has no state citizenship for jurisdictional purposes, and thus may not invoke the diversity jurisdiction of this court.

In 1958, Congress amended Section 1332 of Title 28, adding the following subsection (c):

For the purpose of this section and section 1441 of this title, a corporation shall

---

1. 28 U.S.C. § 1332 provides in relevant part:
   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
   (1) citizens of different States;

. . . .
   (c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of the State by which it has been incorporated and of the State where it has its principal place of business:

be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.[2]

The overriding purpose of this amendment was to restrict the diversity jurisdiction of the federal courts by making it more difficult for corporations to attain complete diversity. Moore & Weckstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited,* 77 Harv.L.Rev. 1426, 1431 (1964); *Crum v. Veterans of Foreign Wars,* 502 F.Supp. 1377, 1380 n. 6 (D.Del.1980). This purpose is reflected in the legislative history: "In adopting this legislation, the committee feels ... that it will ease the workload of our Federal courts by reducing the number of cases involving corporations which come into Federal district courts[.]" S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad. News 3099, 3101.

Under a judicially created doctrine existing at the time of the 1958 amendment, a corporation organized under federal law, whose activities were confined, either in fact or by its charter, to a single state, was regarded as a citizen of that state for jurisdictional purposes. Such a "localized" corporation therefore could invoke the diversity jurisdiction of the federal courts. *See, e.g., Elwert v. Pacific First Federal Savings & Loan Association,* 138 F.Supp. 395, 399–402 (D.Or.1956); *Feuchtwanger Corp. v. Lake Hiawatha Federal Credit Union,* 272 F.2d 453, 454–56 (3d Cir.1959). On the other hand, a federal corporation which had been organized to do business in several states, and which in fact was doing business in several states, was viewed as having national citizenship only. *See, e.g.,*

*Bankers Trust Co. v. Texas & Pacific Railway Co.,* 241 U.S. 295, 309, 36 S.Ct. 569, 572, 60 L.Ed. 1010 (1916). Diversity jurisdiction over such a "non-localized" corporation thus was precluded, unless Congress had enacted a specific statutory provision, such as 28 U.S.C. § 1348, providing for citizenship in a particular state, *see id.* at 310, 36 S.Ct. at 573,[3] or the federal statute incorporating the entity characterized it as a "body corporate" of a particular state, *see Patterson v. American National Red Cross,* 101 F.Supp. 655 (S.D.Fla.1951).[4]

In essence, the USOC's argument is that in enacting the 1958 amendment, Congress intended to apply the "principal place of business" criterion to federally chartered corporations as well as to corporations organized under state law, thus permitting non-localized federal corporations previously not citizens of any particular state for jurisdictional purposes to assert diversity jurisdiction pursuant to § 1332(c). The difficulty with this argument is that there is no evidence that Congress ever considered the applicability of the 1958 amendment to federal corporations. Moore & Weckstein, *supra,* at 1438; 1 J. Moore, *Moore's Federal Practice,* ¶ 0.77[2.–4] at 717.50 (2d ed. 1964) ("In brief, the amendatory Act of 1958 ... does not deal with a corporation chartered by an act of Congress."). Rather, "Congress probably intended the 1958 amendment to affect the jurisdictional status of state-incorporated companies only, leaving the status of federal corporations to receive further elaboration by the federal courts." Moore & Weckstein, *supra,* at 1438.

Few courts have considered the precise question presented here. In *Federal De-*

---

**2.** 28 U.S.C. § 1332(c), as amended by Act of July 25, 1958, Pub.L. 85–554, 72 Stat. 415. Among other changes, Public Law 85–554 also increased the jurisdictional minimum from $3,000 to $10,000.

**3.** 28 U.S.C. § 1348 provides in pertinent part: "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the State in which they are respectively located."

**4.** The American National Red Cross' charter provides in relevant part: "[The incorporators listed herein] are created a body corporate and politic in the District of Columbia." 36 U.S.C. § 1. While the charter also authorizes the American National Red Cross to operate and carry on activities throughout the United States, the *Patterson* court found this language sufficient to deem the corporation a citizen of the District of Columbia for diversity of citizenship purposes.

*posit Insurance Corp. v. National Surety Corp.*, 345 F.Supp. 885 (S.D.Iowa 1972), the court expressly declined to apply § 1332(c) to the Federal Deposit Insurance Corporation ("F.D.I.C."), in holding that the F.D.I.C., which has its principal place of business in Washington, D.C., has no citizenship in any particular state for diversity of citizenship purposes. The court reasoned:

... although the Court feels there is some merit to the argument that the F.D.I.C. has a principal place of business in Washington, D.C. and could be considered a citizen of the District of Columbia under Title 28 U.S.C., Section 1332(c), ... when Congress passed the amendment to Section 1332(c) in 1958 which made a corporation a citizen of the State of its principal place of business, the intention was to limit jurisdiction of the federal courts. Here the defendant is trying to use this same amendment to expand federal jurisdiction for cases involving federal corporations.

If federal corporations whose principal place of business is located in the District of Columbia were to be considered citizens of that District, diversity jurisdiction would be expanded to almost all suits involving federally chartered corporations. This would be a result not intended by Congress. Before 1948 all suits by or against any federally chartered corporation were deemed to involve a federal question. In 1948 Title 28 U.S.C., Section 1349 was passed by Congress providing that a federal question is involved only in suits where over one-half of the stock of the federal corporation is owned by the United States. This Congressional attempt to limit federal court jurisdiction would be nullified by defendant's interpretation of diversity jurisdiction which would give federal jurisdiction to almost all suits involving federally chartered corporations. Without clearer authority, this court declines to expand its jurisdiction into this new area.

*Id.* at 887–88 (remanding for lack of subject matter jurisdiction). Two years later, the Ninth Circuit found this "reasoning to be persuasive," in concluding that the Federal Savings and Loan Insurance Corporation ("FSLIC"), which also has its principal place of business in Washington, D.C., similarly has no citizenship in any particular state for diversity purposes. *Hancock Financial Corp. v. Federal Savings & Loan Insurance Corp.*, 492 F.2d 1325, 1329 (9th Cir.1974) (affirming a dismissal for lack of subject matter jurisdiction).

Only one court actually has applied § 1332(c) to a federal corporation. In what has been described as "a rather cryptic opinion," *Crum v. Veterans of Foreign Wars*, 502 F.Supp. at 1380, the court in *Enterprise Electric Co. v. Blackfeet Tribe of Indians*, 353 F.Supp. 991 (D.Mont.1973), assigned Montana citizenship to a federally incorporated Indian tribe whose principal and "only place of business" was in that state. The *Enterprise* court reached this result by concluding, without citing any supporting authority, that, "[t]he jurisdictional problems presented in cases involving localized federal corporations [citations omitted] prior to the passage of Public Law 85–554 were eliminated by that law which added the present subsection "c" to 28 U.S.C. § 1332." *Id.* at 992, n. 5.

Like the *Crum* court—which avoided reaching the issue presented here by holding that the record before it was inadequate to determine the location of the defendant's principal place of business—this court does not find *Enterprise* persuasive authority for the proposition that Congress intended § 1332(c) to apply to federal corporations. Since the application of § 1332(c) to federal corporations would increase the number of litigants with access to the federal courts, thus directly contravening the purpose of the 1958 amendment, surely a strong case would have to be made that Congress intended such a result. It does not appear that any such case can be made. As a consequence, this court declines to hold that Congress intended to permit § 1332(c) to serve as a basis for granting state citizenship to federal corporations. The matter should be left for future Congressional clarification, if any is required.

Since, as noted above, Congress did not consider the applicability of § 1332(c) to federal corporations, "the federal courts do not seem foreclosed from continuing to hold that a federal corporation, localized in a particular state, is a citizen of that state for jurisdictional purposes." Moore & Weckstein, *supra*, at 1438. Therefore, although not raised by the USOC, it is also necessary to consider whether the USOC is localized in Colorado.

The USOC is a private, nonprofit corporation, first incorporated and granted a federal charter in 1950 (36 U.S.C. § 371, *et seq.*, as amended in 1964 and again by the Amateur Sports Act of 1978). The terms of its charter clearly indicate that it was the intention and expectation of Congress that the USOC would conduct its business throughout the United States.[5] No provision in the charter restricts the places in the United States in which the USOC may pursue the objects for which it was organized.[6] That the USOC in fact "does business in California and elsewhere in interstate commerce[,]" already has been recognized. *International Olympic Committee v. San Francisco Arts & Athletics*, No. C–82–4183 RFP at 2 (N.D.Ca. August 20, 1982) (granting a preliminary injunction enjoining defendants from using the word "Olympic" in connection with their activities), *aff'd* 707 F.2d 517 (9th Cir.1983).

Both under the terms of its charter and as a result of its multi-state, if not nationwide, activities, the USOC cannot be considered to be "localized" in Colorado. The USOC simply does not exhibit the narrow geographic scope required to support a finding of localization. *See, e.g., Elwert v. Pacific First Federal Savings & Loan Association*, 138 F.Supp. 395 (federal savings and loan association was localized in the State of Washington, where its charter specified that its home office was to be located in Tacoma, Washington, and did not authorize the transaction of business in other states); *Feuchtwanger Corp. v. Lake Hiawatha Federal Credit Union*, 272 F.2d 453 (federal credit union was localized in New Jersey, where its charter limited its place of business to Lake Hiawatha, New Jersey, and restricted its membership to permanent residents of and those working in Lake Hiawatha, employees of the credit union, and immediate families); *Parker Drilling Co. v. Metlakatla Indian Community*, 451 F.Supp. 1127 (D.Alaska 1978) (federal Indian corporation was localized in Alaska, where its only major business activities and situs were located in that state).

Rather, the USOC, in being authorized to do business and in doing business nationwide, more closely resembles the American Legion, the Disabled American Veterans, and the Veterans of Foreign Wars, all of which are non-localized federally chartered corporations. *See Harris v. American Legion*, 162 F.Supp. 700 (S.D.Ind.1958) (defendant was not localized in Indiana, despite the fact that its national headquarters had been located there since 1919, where it was authorized to organize and operate in every state and to establish and maintain offices without situs, and where its powers in fact had been exercised equally in every state), *aff'd per curiam*, 261 F.2d 594 (7th Cir.1958); *Rice v. Disabled American Veterans*, 295 F.Supp. 131 (D.D.C.1968) (defendant was not localized in Kentucky, despite the location of its national headquarters there, where, like the American Legion, it was created and declared to be a

---

**5.** *See* 36 U.S.C. § 371 (original incorporators are from all over the United States); § 374 (corporate purposes are to encourage, coordinate, develop, promote and support amateur athletics in the United States); § 375 (corporate powers can be exercised throughout the United States); § 376 (corporation is to represent individuals, amateur athletes, and amateur sports organizations throughout the United States); § 381 (corporation to designate agents in every state to receive service of process).

**6.** Indeed, in 1978, the Amateur Sports Act eliminated the only arguably restrictive provision in the charter, when it amended 36 U.S.C. § 371 by substituting "The Corporation shall maintain its principal offices and national headquarters in *such place in the United States as is determined by the Corporation*," for "The Corporation shall maintain its principal offices and national headquarters in *the city of Washington, District of Columbia[.]*" (Emphasis added.)

body corporate without situs, with the authority to transact business in several states); *Crum v. Veterans of Foreign Wars*, 502 F.Supp. 1377 (defendant was not localized in Missouri, despite the fact that its national headquarters had been located there for more than twenty-five years, where its charter conveyed a picture of national organization, and it in fact operated chapters and subsidiary corporations in many states). The distinguishing factor in these two groups of cases has been "whether the federally chartered corporation generally had a situs within one state or was authorized to do business and doing business in several states." *Parker Drilling Co. v. Metlakatla Indian Community*, 451 F.Supp. at 1138.[7]

■ In sum, this court does not have jurisdiction over the USOC based on diversity of citizenship. The USOC is authorized to do business and in fact does business throughout the United States, and thus has national citizenship only. It is not a citizen of any particular state for jurisdictional purposes under 28 U.S.C. § 1332(a)(1).

## II. FEDERAL QUESTION JURISDICTION

■ The USOC makes no allegations that removal is based on federal question jurisdiction.[8] Nevertheless, examination of this issue by the court on its own motion is appropriate. *See Albert v. Chafee*, 465 F.2d 367, 368 (9th Cir.1972).

The theory that a case in which a federally chartered organization is a party "arises under" federal law had its genesis in *Osborn v. Bank of the United States*, 9 Wheat. 738, 6 L.Ed. 204 (1824). In an opinion by Chief Justice Marshall, the Court held that the "arising under" language of Article III of the United States Constitution authorized the conferring of jurisdiction on the federal courts over all suits in which the Congressionally created Bank of the United States was a party. Later, in the *Pacific Railroad Removal Cases*, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), the Court, applying the *Osborn* construction, held that federal incorporation of a party ipso facto made a case involving that party one "arising under the laws of the United States" within the meaning of 18 Stat. 470 (1875), now codified as 28 U.S.C. § 1331(a).

Although the continued vitality of the *Pacific Railroad Removal Cases* has been cast in doubt, *see, e.g., Gully v. First National Bank of Meridian*, 299 U.S. 109, 113–114, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Hancock Financial Corp. v. Federal Savings and Loan Insurance Corp.*, 492 F.2d at 1328 n. 3, it is unnecessary for this court to resolve that question. Whatever the continued vitality of the *Pacific Railroad Removal Cases* may be, federal question jurisdiction is still lacking in this suit.

Congress enacted the Act of 1925, now codified as 28 U.S.C. § 1349 "to stem 'the flood of litigation to which the federal courts were * * * subjected' as a result of the decision in the *Pacific Railroad Removal Cases*[.]" *Murphy v. Colonial*

---

**7.** In order to establish that it maintains its principal place of business in Colorado, the USOC submitted an affidavit of its corporate counsel which states that the administration of the USOC's affairs is conducted on a day-to-day basis solely within Colorado; the USOC has substantial real estate holdings in Colorado, but owns no facilities or other property outside Colorado; the USOC does not maintain office space outside Colorado; and Colorado is the only state to which the USOC pays taxes. Without deciding whether these allegations, if true, would be sufficient to establish that the USOC has its principal place of business in Colorado, they are inadequate to localize the USOC in that state. This is because localization requires confinement of activities, either by charter or in fact, to

a single state, whereas a principal place of business can be maintained despite the transaction of interstate business. Contrary to the USOC's assertions, the tests for localization and principal place of business have not been assimilated. While, in order to be localized in a particular state, a federal corporation must have its principal place of business in that state, maintenance of a principal place of business does not in and of itself amount to localization.

**8.** 28 U.S.C. § 1331 provides that the district courts shall have original jurisdiction of all suits which arise "under the Constitution, laws, or treaties of the United States ...."

*Federal Savings and Loan Association,* 388 F.2d 609, 612 (2nd Cir.1967). Section 1349 provides that:

> The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half its capital stock.

Several federal courts have applied the capital stock requirement of § 1349 literally, requiring the United States to actually possess stock certificates representing a one-half interest in the federal corporation, before finding the statute satisfied. *See Hancock Financial Corp. v. Federal Savings and Loan Insurance Corp.,* 492 F.2d at 1328–29; *Stop the Olympic Prison v. United States Olympic Committee,* 489 F.Supp. 1112, 1117 (S.D.N.Y.1980); *Crockett Mortgage Co. v. Government National Mortgage Association,* 418 F.Supp. 1081, 1083 (E.D.Pa.1976). In *Hancock,* the principal stockholder in a savings and loan association brought an action in federal court to enjoin the FSLIC, a federally chartered institution, from liquidating the association's assets. The Ninth Circuit rejected the plaintiff's asserted grounds for federal court jurisdiction, including federal question jurisdiction. Although all of the FSLIC's stock had once been owned by the United States, it had been retired long before the inception of the law suit. Thus, as

one of the grounds for the rejection of federal jurisdiction over the FSLIC, the Ninth Circuit, citing the "literal wording of 28 U.S.C. § 1349", held that jurisdiction was not conferred over a federally chartered corporation "whose entire stock once was owned by the United States." [9] *Hancock Financial Corp. v. Federal Savings and Loan Insurance Corp.,* 492 F.2d at 1329.

A strict construction of § 1349 compels the conclusion that federal question jurisdiction is lacking in the instant case. 36 U.S.C. § 378 states that "[t]he Corporation shall have no power to issue capital stock ...." Obviously, since there is no stock, the United States does not own more than one-half of it and federal jurisdiction is not conferred under § 1349.

In contrast to this literal view, other federal courts have employed a more flexible approach in construing § 1349. These courts believe that Congress did not intend to place operative significance on subtle nuances of corporate law; rather they believe that the Congressional use of the words "capital stock" was simply a shorthand expression for control and ownership.[10] Their conclusion is supported by the legislative history of § 1349, *see Jackson v. Tennessee Valley Authority,* 462 F.Supp. 45, 51–52 (M.D.Tenn.1978), *aff'd per curiam,* 595 F.2d 1120 (6th Cir.1979), and by the ambiguities in the term "capital stock." [11] It is also supported by the Su-

---

**9.** The court's opinion was heavily influenced by the specific language in the jurisdictional provisions of the statute creating the FSLIC, 12 U.S.C. § 1730(k)(1), which the court found controlling. *Id.* at 1327. The court felt "compelled to look primarily to that section in determining jurisdiction over the FSLIC." *Id.* at 1329. Thus, in a case not governed by such a provision, such as the instant one, the precedential effect of *Hancock*'s literal construction of § 1349 is somewhat clouded.

**10.** These courts have sharply criticized the *Hancock Financial Corp.* interpretation of § 1349. For example, in *Government National Mortgage Association v. Terry,* 608 F.2d 614, 621 n. 10 (5th Cir.1979), the Fifth Circuit asserted that the *Hancock* court's "blind reliance on the literal wording of section 1349 exalts form over substance." *See also Jackson v. Tennessee Valley*

*Authority,* 462 F.Supp. 45, 52 n. 3 (M.D.Tenn. 1978), *aff'd per curiam,* 595 F.2d 1120 (6th Cir. 1979).

**11.** 18 C.J.S. *Corporations* § 193 at 614 (1939) states: "The 'capital stock' of a corporation, in the strict and proper sense, is the sum total fixed by the charter or articles of incorporation as the amount paid in, or to be paid in, as the capital on which the corporation is to do business; or the fund of money or other property fixed as the basis for conducting the business of the corporation, as distinguished from the shares representing the separate interest of the individual stockholders; or, in other words, the money or its equivalent advanced by the corporators or members as the capital, which is usually for convenience divided into equal amounts called shares, for which each member is entitled

preme Court's dictum in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 485, 53 S.Ct. 447, 450, 77 L.Ed. 903 (1933), in which the Court stated that § 1349 limits the doctrine of the *Pacific Railroad Removal Cases* "to cases of government owned corporations alone."

In *Jackson*, for example, the Sixth Circuit approved a district court's holding that, despite the fact that the TVA had issued no capital stock, federal jurisdiction was present under § 1331(a). The district court observed that, in the legislative history to the 1959 Amendments to the TVA Act, both houses of Congress described the United States as "the owner and sole stockholder of TVA". S.Rep. No. 470, 86th Cong., 1st Sess. 11 (1959); H.R.Rep. No. 271, 86th Cong., 1st Sess. 8 (1959). The court also relied on the fact that under the statute, TVA's net proceeds over its expenses are payable into the United States Treasury (16 U.S.C. § 831y), and that all real and personal property for TVA activities is acquired and held by the United States (16 U.S.C. §§ 831w, 831x). Since an issuance of shares would have been superfluous under these circumstances, the court found jurisdiction present. *See also Monsanto v. Tennessee Valley Authority*, 448 F.Supp. 648 (N.D.Ala.1978).

In contrast to the TVA, the USOC is neither owned nor controlled by the United States. The USOC, not the United States, is the legal owner of its property. 36 U.S.C. § 375(a)(8). Any surplus funds do not revert to the United States Treasury. Furthermore, the USOC is a self governing body, operating independently of public control. 36 U.S.C. § 374. As recently observed by a federal court, which held that the USOC's operations do not constitute "state action" under the federal Constitution, "[a]lthough federally chartered, [the USOC] is a private organization." *DeFrantz v. United States Olympic Committee*, 492 F.Supp. 1181, 1192 (D.D.C.), *aff'd mem.*, 701 F.2d 221 (D.C.Cir.1980).

Finally, and of equal importance, is the fact that the USOC is not included in the Congressional definitions of either a "mixed-ownership Government corporation" or a "wholly owned Government corporation," appearing in 31 U.S.C. § 9101.[12] These definitions should apply to other statutory provisions to which federal ownership is germane, such as 28 U.S.C. § 1349. They therefore provide an additional basis for concluding that jurisdiction over the USOC is lacking even under the flexible approach to § 1349.[13]

■ Thus, in substance, as well as in form, the United States does not own the USOC and federal question jurisdiction over this suit is lacking under 28 U.S.C. § 1349.[14]

Accordingly, IT IS ORDERED that plaintiffs' motion is granted and the cause is remanded to the Superior Court of the State of California for the County of Los Angeles.

---

to a certificate, showing the number of shares he has in the company."

**12.** The Government Corporation Control Act was enacted in 1945 to provide "the means for effective control by the Congress over the Government corporations...." S.Rep. No. 694, 79th Cong., 1st Sess., *reprinted in* 1945 U.S.Code Cong.Serv. 887, 890.

**13.** In contrast, the FSLIC, the Government National Mortgage Corporation, and the TVA are included in the Congressional definition of a wholly owned government corporation. As a consequence, cases such as *Hancock* and *Crockett* can be explained only on the ground that either the *Pacific Railroad Removal Cases* are no longer good law or that the words "capital stock" in 28 U.S.C. § 1349 should be interpreted literally.

**14.** In view of the above rulings that jurisdiction is absent, it is not necessary to address plaintiffs' second argument that the USOC did not file its removal petition within the mandatory thirty-day time limit of 28 U.S.C. § 1446(b).