**LOYOLA FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**William A. FICKLING, JR., Defendant/Third–Party Plaintiff,**

v.

**OCEAN FOREST PLAZA ASSOCIATES LIMITED PARTNERSHIP, a South Carolina limited partnership, Erwin A. Friedman, Stephen S. Friedman and Steven R. Gretenstein, Third–Party Defendants.**

**Civ. A. No. 89–110–2–MAC(DF).**

United States District Court, M.D. Georgia, Macon Division.

Jan. 29, 1992.

Robert W. Dibble, Jr., McNair Law Firm, Columbia, S.C., Thomas A. Nash, Jr., Sam P. Inglesby, Jr., Inglesby, Falligant, Horne, Courington & Nash, Savannah, Ga., for plaintiff.

Charles T. Huddleston, Robert L. Rothman, Arnall, Golden & Gregory, Atlanta, Ga., Ronald L. Thomason, Arnall, Golden & Gregory, Macon, Ga., Robert W. Beynart, Cullen C. Wilkerson, Smith, Gambrell & Russell, Atlanta, Ga., for defendants.

FITZPATRICK, District Judge.

Pending before the court are a series of motions in this complex case. In a consent order issued on March 20, 1991, defendant/third-party plaintiff William A. Fickling, Jr., ("Fickling") dismissed with prejudice his claims against third-party defendants Steven S. Friedman and Steven R. Gretenstein, removing them from this case and mooting their motion for summary judgment. Presently pending are motions by Loyola Federal Savings & Loan Association ("Loyola") for summary judgment on its contract claim and on Fickling's counterclaims, by Fickling for partial summary judgment on Loyola's contract claim, by Loyola for leave to amend its reply to Fickling's counterclaims and by third-party defendants Ocean Forest Plaza Associates Limited Partnership ("OFP") and Erwin A. Friedman ("Friedman") for leave to amend their answers to Fickling's second amended third party complaint. Once the facts have been given, the court will consider the motions for leave to amend first.

## BACKGROUND

OFP is a limited partnership operating a condominium project in Myrtle Beach, South Carolina. Friedman is OFP's general partner while Fickling is a limited partner. Before the events which gave rise to this lawsuit, Loyola advanced $16.37 mil-

lion to OFP as a construction loan. It was later determined that more funds were needed, so the parties entered into negotiations for an extension loan. Loyola Vice-President Thomas Marvel spoke with Ronald Thigpen, an officer of First Union Bank in Macon, Georgia, and gave details about the OFP project.

On March 27, 1987, a deal was closed in Myrtle Beach, South Carolina, by which Fickling agreed to guarantee a loan extension of $1.1 million to OFP by Loyola. Four documents, all prepared by Loyola's attorneys from Piper & Marbury in Baltimore, Maryland, were part of the closing: (1) a second promissory note covering the loan extension; (2) a modification agreement to allocate funds from the sale of condominiums between the original construction loan and the extension; (3) an unconditional guaranty by Fickling of the extension; and (4) a pledge agreement by which the proposed guarantors pledged their partnership interests in OFP to Loyola as collateral for the extension. (Exhibits A–D attached to Fickling's Motion for Partial Summary Judgment).

Fickling was not present at the closing, however, and in fact had signed the documents previously in Macon, Georgia. Marvel delivered the documents to Friedman, who forwarded them to Fickling. (Loyola's Proposed Findings of Fact, para. 35). Friedman had sent a copy of the proposed modification agreement to Fickling before March 24, and sent the other three documents to Fickling on that date. On March 25, Fickling signed the second promissory note, the unconditional guaranty and the pledge agreement. The documents were then sent to Friedman in Savannah, Georgia, by overnight delivery so he could take them to the closing.

Also on March 25, and unknown to Fickling, Marvel sent a revised version of the modification agreement to the South Carolina attorney who was to close the deal. (Marvel Depo., pp. 8–9, Exhibit F–198 attached to Fickling's Exhibit E). The modification agreement signed by Fickling provided that the sums raised by OFP from the sale of condominium units be applied on a pro rata basis to the original construction loan and the $1.1 million extension loan. (Exhibit G to Fickling's Motion, p. 2). The revised version sent by Marvel also provided for a pro rata application of the sales proceeds, but only after revenues from the sale of the first 55 condominium units were applied to the remaining balance of the original construction loan (not guaranteed by Fickling) and only if OFP met certain budget goals. (Exhibit B to Fickling's Motion, p. 2). Fickling never saw the revised version.

After Fickling had signed the unconditional guaranty and pledge agreement in Macon, Marvel sent new versions of these documents to the closing attorney. (Marvel Depo., pp. 9–20). The revised versions of these documents were prepared by Piper & Marbury. (Jones Depo., pp. 42–43). After comparing the "footers" left by different word processing machines on the page bottoms of the unconditional guaranty, an attorney from Piper & Marbury testified that the signature page from the version signed by Fickling had been removed and attached to the revised version which Fickling had never seen. (Jones Depo., pp. 32–33; Exhibits C and K to Fickling's Motion). Likewise, page 6 of the final version of the pledge agreement has a word processing footer different from the other pages in that document. (Exhibit D to Fickling's Motion). Loyola was represented at the closing by David Noyes, another of its vice-presidents.

OFP failed to make payments on the loans and they were declared to be in default. After Fickling refused to pay under the guaranty, Loyola filed this suit on March 28, 1989. On October 10, 1989, Loyola and Friedman entered into a forbearance agreement by which both Loyola and OFP agreed to sacrifice certain rights in order to speed up the collection process.

## DISCUSSION

### I. THE MOTIONS FOR LEAVE TO AMEND

Loyola filed its motion for leave to amend on September 3, 1991. It seeks to assert the following additional defenses:

(1) that Fickling's securities fraud claims are barred by the statute of limitations; (2) that the counterclaims based on subrogation and the alleged breach of fiduciary duty are barred by Fickling's inequitable conduct; (3) that Fickling is estopped from asserting claims against Loyola based on subrogation and the alleged breach of fiduciary duty; (4) that Fickling has waived in writing all claims regarding impairment or misuse of collateral; and (5) that Fickling's claims are barred by contributory or comparative negligence. OFP and Friedman filed their motion for leave to amend on October 11, 1991, seeking to assert defenses identical to the first, second and fifth ones listed immediately above. Fickling has opposed both motions.

■ Federal Rule of Civil Procedure 15(a) requires permission from the court to amend a pleading more than 20 days after it has been served and states that leave shall be freely given when justice so requires. There is a limit to this generosity, however. In this case, Loyola has waited more than a year after the close of discovery and more than 9 months after its summary judgment motion was filed to seek leave to amend. OFP and Friedman have waited even longer. When a movant's delay hinders judicial economy and prejudices his opponent, but burden shifts to the movant to show good cause to allow the amendment. *Best Canvas Prod. & Supplies v. Ploof Truck Lines Inc.*, 713 F.2d 618, 623 (11th Cir.1983).

■ The burden is clearly on the movants in this case, since allowing the amendment would hinder judicial economy and prejudice Fickling by necessitating the trouble and expense of reopening discovery to investigate these defenses. Furthermore, no meritorious explanation has been given for the delay. The alleged facts forming the bases of the motions were surely known after the completion of discovery and before the filing of the motions for summary judgment. Without such good cause, motions to amend filed well after the completion of discovery which require the reopening of discovery are routinely denied. *Minor v. Northville Public*

*Schools,* 605 F.Supp. 1185, 1202 (E.D.Mich. 1985). *See also, Mullinax v. McNabb–Wadsworth Truck Co.,* 117 F.R.D. 694 (N.D.Ga.1987). Accordingly, both motions to amend are denied.

## II. THE CROSS MOTIONS FOR SUMMARY JUDGMENT ON LOYOLA'S CONTRACT CLAIM

Under Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment bears the initial burden of showing there are no genuine issues of material fact that should be decided at trial and that it is entitled to judgment as a matter of law. When this has been done, the burden shifts to the nonmoving party to demonstrate that there is indeed a material issue of fact or law precluding summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

Loyola's claim rests primarily on the plain language of the guaranty agreement. Fickling has alleged a series of affirmative defenses to counter Loyola's suit. He claims: (1) that there was no contract between the parties; (2) fraud in the inducement; (3) violations of the Federal Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); (4) estoppel and waiver; (5) a potential double recovery on Loyola's part; (6) that the foreclosure sale on OFP was conducted in a commercially unreasonable manner; (7) that Loyola deliberately underbid at the foreclosure sale; (8) that he is entitled to credits from the sale of OFP condominium units should a contract between the parties be found to exist; (9) that the court-appointed receiver of OFP misapplied funds; (10) that he is not liable for interest or attorney's fees under the terms of the guaranty; (11) impairment of collateral; and (12) that Loyola's claim is barred by its conduct in inducing and participating in Friedman's breach of a fiduciary duty owed to Fickling.

■ Loyola and Fickling have devoted most of their energies to the question of whether a contract existed, and both have moved for summary judgment on this issue. Fickling's affirmative defense rests on his allegations that material revisions

were made to several documents after he signed them and before they were presented at the closing. The law relevant to this defense is clear. There can be no valid contract if there is no meeting of the minds between the parties on the terms of the agreement. *Cox Broadcasting Corp. v. Nat'l Collegiate Athletic Ass'n*, 250 Ga. 391, 297 S.E.2d 733 (1982); *Player v. Chandler*, 299 S.C. 101, 382 S.E.2d 891 (1989). Where a group of documents are executed at the same time and as part of one transaction, they are to be construed together. *Rizk v. Jones*, 243 Ga. 545, 255 S.E.2d 19 (1979); *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 232 S.E.2d 20 (1977).

■ As explained above, there is no doubt that the documents signed by Fickling and those presented at the closing were different. In this case there was no meeting of the minds regarding the modification agreement since the revisions in Loyola's version of that document were to Fickling's detriment. The revisions delayed the date on which any funds would be applied to the loan extension and instead increased the amounts to be applied to the original construction loan, greatly increasing Fickling's potential liability. The facts indicate that all parties considered the four documents in question to be part of one transaction. Fickling executed them together and then sent them all to Friedman. The revised versions were then presented at the closing as a group. Since the modification agreement must be construed with the others as part of the same transaction, all four are invalid and no contract can be said to have existed. Even if this were not the case, the substitution of the signature pages would be sufficient in itself to prohibit there being a binding contract. It would appear instead that the revisions and substitutions at best constituted a rejection of Fickling's offer and a counteroffer by Loyola which Fickling never saw. *See, South Atlanta Associates, Ltd. v. Strelzik*, 192 Ga.App. 574, 385 S.E.2d 439 (1989).

Loyola's arguments against Fickling's claim of no contract have no merit. Loyola strongly claims that it had no knowledge of the revisions, but this cannot be so. As noted above, Marvel prepared the documents sent to Fickling by Friedman which Fickling later signed. The revised documents were prepared by Loyola's attorneys and sent to the closing by Marvel. Surely Marvel must have known that the sets of documents he sent out were different. Since Noyes, another of Loyola's officers, attended the closing, he must have known that Fickling was not there although the documents presented already bore his signature. The page substitutions on the unconditional guaranty and the pledge agreement must have been done at the closing or immediately thereafter, since that would have been the first time the papers signed by Fickling and the new ones prepared by Piper & Marbury could have been integrated. Even if Loyola's claim of ignorance is taken as true, this would be no reason to hold Fickling to the guaranty since the mere fact that material revisions were made is sufficient to void the contract. Thus, it would be unfair to hold Fickling to an invalid contract even if Loyola had signed the documents in good faith.

Loyola claims that if Fickling believed the documents he signed were drafts, this constitutes a unilateral mistake which will not relieve him of liability. *See, Cox v. Smith*, 244 Ga. 280, 260 S.E.2d 310 (1979). The evidence supports Fickling's claim that he believed the documents he signed were the final papers. This is shown by his failure to protest the closing, which he surely would have done had he believed the papers he signed were mere drafts which were then used as final documents at the closing. Moreover, what reason would Fickling have had for signing a draft? Finally, regardless of whether Fickling believed he had signed a draft or the final documents, his belief could have provided no justification for revising the terms of the modification agreement and substituting signature pages in other documents.[1]

**1.** Mr. Ellsworth Hall, III, Fickling's attorney, apparently did believe that the documents signed by Fickling were drafts. (Hall Depo., pp. 8–9). The two did not confer, however, and Fickling, whose signature went on the documents, acted on the belief that they were final.

Loyola further argues that Fickling should be estopped from attacking the circumstances of the closing because he failed to read the documents. Of course a party to a contract has an obligation to read its terms, but Loyola's claim is immaterial even if true. The revisions changed the terms of the documents which Fickling signed in a material manner, meaning that he would not have benefitted at all by reading them before signing them. Likewise, it is immaterial even if Fickling did fail to read the papers he received after the closing. It is apparent that he had no reason to know of the revisions and substitutions until after this lawsuit was filed and discovery began. Fickling was entitled to rely on the good faith of the other parties and was under no obligation to search the documents after the closing for evidence of any changes. This same reasoning applies to Loyola's claim that Fickling never demanded that any of the proceeds be applied on a pro rata basis. There was never a reason for him to do this, since by all indications he believed it was already being done.

Loyola's claim that the foreclosure on OFP makes the revisions moot is obviously incorrect, since the revisions and substitutions mean there was no contract, and thus no guaranty, from the beginning. Loyola's argument that Fickling is barred by the doctrines of laches and unclean hands has no merit. These are equitable doctrines and are not applicable to this contract action.

Loyola also contends that Fickling is bound by Friedman's actions as an agent with apparent authority at the closing. While there is no doubt that Friedman could act on behalf of OFP, there is no reason at all to believe that he had any authority to bind Fickling in the latter's individual capacity as a guarantor. (Fickling's statement on page 31 of his second deposition that "We had someone there," referring to Friedman being present at the closing, is best interpreted to mean that Friedman represented OFP rather than Fickling personally.) Even if Friedman could be considered Fickling's agent, it stretches the imagination to believe that his authority would be so extensive as to allow him to substitute signature pages. While Loyola has claimed that Fickling's actions were analogous to signing a contract with blank spaces, Fickling has effectively countered by pointing out that when a party signs such a contract he expects the blanks to be filled in later. In this case, by contrast, Fickling had no reason to believe that revisions and substitutions would be made and certainly there is no reason to believe that Friedman had the authority to make them.

Finally, Loyola contends that the closing counsel certified that all was correct. This may well have been true to the best of his knowledge. As Fickling notes, however, while this may make for a claim against that attorney, it cannot be construed against Fickling, especially since the attorney in question represented OFP.

Both the facts and the law show that Fickling has carried his burden on his claim of no contract and so his motion for summary judgment on that basis must be granted. Loyola's arguments against this claim are ineffective. There is no need to discuss Fickling's other affirmative defenses.

## III. LOYOLA'S MOTION FOR SUMMARY JUDGMENT ON FICKLING'S COUNTERCLAIMS

Fickling has answered Loyola's claim with a series of counterclaims, alleging: (1) securities fraud; (2) common law fraud; (3) that Loyola assisted in a breach of Friedman's fiduciary duty; (4) negligent communication of information; and (5) that he is subrogated to First Union's rights. Most of these claims arise from Marvel's conversations with Thigpen. Fickling alleges that Thigpen was acting on his behalf in acquiring information and that Marvel made fraudulent misrepresentations and omissions to Thigpen. Loyola denies this and

If Fickling ever did think that the papers he saw were drafts, his signature showed his adoption of their terms as final.

asserts that it had no duty to Fickling and that he had all the information he needed.

■ Loyola's answers to the securities fraud counterclaim rests chiefly on the contention that it owed no duty to Fickling. Regarding the claim of securities fraud, it is clear that the element of a duty to disclose is required when a defendant is alleged not to have stated material facts. *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). Fickling, however, has alleged that Loyola made both omissions and affirmative misrepresentations. Also, a direct duty to an allegedly injured party is not required for aider and abettor liability under Rule 10b–5 of the Securities Act. *See, Woods v. Barnett Bank*, 765 F.2d 1004, 1009 (11th Cir.), *reh'g denied*, 772 F.2d 918 (1985). The court concludes that there remain questions for trial on the elements of Fickling's securities fraud claim.

■ Loyola's arguments against Fickling's common law fraud claim also rest on the assumption that there was no duty between the two, meaning that Fickling cannot show actual fraud since Marvel did not know that his statements to Thigpen would be told to Fickling, negating the element of intent. In Georgia, however, a duty is not given as one of the elements of the tort of fraud, *see, Grizzle v. Guarantee Ins. Co.*, 602 F.Supp. 465, 467 (N.D.Ga. 1984), and privity is not required in a claim of intentional fraud, *Robert & Co. Associates v. Rhodes–Haverty Partnership*, 250 Ga. 680, 300 S.E.2d 503 (1983).[2] The court is satisfied that questions of fact remain on this claim.

There is no question that Friedman, as a general partner of OFP, owed a fiduciary duty to Fickling. Fickling claims that Friedman breached this duty when he entered into the forbearance agreement on behalf of OFP with Loyola on October 10, 1989. Fickling contends that Friedman negotiated away OFP's rights to Loyola in exchange for protection from liability for OFP's debts, but sought no such protection for Fickling.

Loyola has countered by stating that it gained nothing by the forbearance agreement to which it was not entitled anyway, but merely entered into the agreement to speed up its collection of the delinquent loan. Loyola also states that since the foreclosure resulted in a deficiency, there was no equity in the project which could have benefitted Fickling and therefore there was no breach of any fiduciary duty owed to Fickling. Loyola further claims that since Fickling was a primary guarantor it had the right to look to him first for payment if it wished, meaning that its motive for doing so is not material. Even assuming that these contentions are valid, they do not counter Fickling's assertions that Loyola participated in Friedman's alleged breach of his fiduciary duty. Instead, Loyola is merely claiming that the alleged breach had no effect, which is a jury question.[3] The plaintiff's motion for summary judgment on this counterclaim must be denied.

Regarding Fickling's counterclaim for negligent misrepresentation, the court finds that the evidence presents a jury question on this matter. This counterclaim is somewhat confusing. Fickling's contentions regarding Marvel's statements to Thigpen would seem to give rise to a claim for fraud rather than negligence, since he alleges that affirmative misrepresentations were made. While fraud of this type requires no duty between the alleged perpetrator and the injured party, it does require scienter, which Fickling alleges. Negligence, by contrast, does not require scienter but does require the breach of a duty. No reason has been shown to believe that Loyola, as a lender, owed a duty to Fick-

---

**2.** The court believes that Georgia law applies to Fickling's counterclaims since the acts giving rise to them happened in Georgia.

**3.** Assuming for the moment that Loyola's claim that it had no knowledge of the revisions and substitutions discussed above is true, it would appear that Friedman may bear the responsibility for these changes. Loyola has never addressed this possibility, perhaps because it has apparently bargained away its rights against Friedman.

ling, as a potential guarantor, via Thigpen, unless perhaps Marvel knew that Thigpen was acting on Fickling's behalf. This question is hotly contested. The court is therefore willing to let Fickling's counterclaim of negligent misrepresentation survive the present summary judgment motion, but will allow Loyola to move to have this counterclaim stricken should the evidence at trial fail to show the existence of a duty.

As an alternative to his claims of fraud and negligent misrepresentation, Fickling's final counterclaim is that he is subrogated to the rights of First Union since he has repaid a $2.3 million loan made by First Union for the operating expenses of OFP. Loyola's answers to this claim raise questions of fact. There is no reason to believe at this point that Fickling has acted with unclean hands and so is not entitled to equitable relief. Since Fickling's allegations of fraud must be taken as true for the purposes of this part of Loyola's motion (and the record contains sufficient evidence to support them at this stage of the proceedings) and the elements of a subrogation claim appear to be present, the court concludes that Fickling is subrogated to whatever claims against Loyola that First Union may have had.

Loyola's motion for summary judgment on Fickling's counterclaims is denied.

## CONCLUSION

The motion for summary judgment filed by Steven Friedman and Steven Gretenstein is MOOT. The motions for leave to amend by Loyola and Friedman are DENIED. Regarding the contract claim against Fickling, Loyola's motion for summary judgment is DENIED and Fickling's is GRANTED. Loyola's motion for summary judgment on Fickling's counterclaims is DENIED.

SO ORDERED.