United States Court of Appeals,

Eleventh Circuit.

No. 93-9263.

LOYOLA FEDERAL SAVINGS BANK, f/k/a Loyola Federal Savings and Loan Association, Plaintiff-Counterclaim Defendant-Appellant, Cross-Appellee,

v.

William A. FICKLING, Jr., Defendant Third-Party, Plaintiff-Counterclaim Plaintiff-Appellee, Cross-Appellant,

Ocean Forest Plaza Assoc. Limited Partnership; Erwin A. Friedman; Stephen S. Friedman; Steven R. Gretenstein, Third-Party Counterclaim Defendants.

July 14, 1995.

Appeals from the United States District Court for the Middle District of Georgia. (No. 5:89-00110-CV-2-MAC(DF), Duross Fitzpatrick, Chief Judge.

Before KRAVITCH, Circuit Judge, and GODBOLD and RONEY, Senior Circuit Judges.

RONEY, Senior Circuit Judge:

Alleging diversity jurisdiction, Loyola Federal Savings Bank filed this suit in federal court against William A. Fickling, Jr. seeking recovery on a $1,100,000 loan guaranty. After four years of litigation, the entry of summary judgment against it on its complaint, and an adverse jury award of $2.7 million to Fickling on his counterclaims, while awaiting a ruling on post-trial motions, Loyola filed a "suggestion" that the district court lacked subject matter jurisdiction. Its theory was that Loyola was a federally chartered corporation and not a citizen of any state for diversity purposes.

The district court accepted the argument that it did not have diversity jurisdiction, but retained jurisdiction of all claims

because Fickling pled a federal securities counterclaim, which invoked federal jurisdiction. Accordingly, the court ruled that it had pendent jurisdiction over Fickling's state law claims, and Loyola's initial claim would be a compulsory counterclaim to Fickling's state law claims.

We affirm the decision of the district court that it had jurisdiction, but on the independent ground that it had diversity jurisdiction. As to the various other issues raised on appeal and cross-appeal, we affirm, or dismiss as moot, except as to a portion of the judgment, $520,000, which would amount to "double recovery" by Fickling.

In 1985, Loyola Federal Savings Bank loaned the Ocean Forest Limited Partnership $16.37 million to construct a hotel condominium project in Myrtle Beach, South Carolina. Later that year, William A. Fickling Jr., a resident of Georgia, invested approximately $750,000 in Ocean Forest in return for a share in the limited partnership. In late 1986, Erwin Friedman, the sole general partner of Ocean Forest, obtained additional funding for Ocean View from Loyola in the amount of $1.1 million. Fickling guaranteed this loan. As part of the requirement for the loan, Ocean Forest obtained a $1.5 million line of credit through the First Union Bank of Macon, which Fickling also guaranteed. Still in need of funds in late 1987, Ocean Forest obtained an additional $800,000 on this line of credit, again with Fickling's guarantee. Eventually, Fickling, as guarantor, paid off the First Union loans.

On December 28, 1988, Loyola, in state court proceedings, foreclosed on the Ocean Forest property in South Carolina. When

Loyola filed this suit in federal court in Georgia on the $1.1 million loan guaranty, Fickling counterclaimed asserting federal securities and state law claims, including a claim as subrogee to an alleged First Union claim against Loyola. As to Loyola's claim on the guaranty, the district court granted summary judgment to Fickling because Loyola had altered the loan agreements without Fickling's consent.

The district court then dismissed the federal securities counterclaim for failure to state a cause of action. Fickling's state law counterclaims were submitted to a jury, which rendered verdicts in favor of Fickling. Only two survived a judgment notwithstanding the verdict: a judgment for $2.49 million on the claim of subrogation to a First Union cause of action for misrepresentation by Loyola in inducing the First Union loan, and a judgment for $215,000 on a claim that Loyola assisted Ocean Forest's general partner in a breach of a fiduciary duty owed to Fickling. Loyola appeals the summary judgment against it and the judgments on the subrogation and breach of fiduciary duty claims.

Fickling cross-claims the dismissal of certain of his claims, but our affirmance of the judgments in his favor make these issues moot, since he recovered all that he was entitled to under the affirmed claims.

## Jurisdiction

In our *de novo* review of the district court's determination of subject matter jurisdiction, *see Woodruff v. U.S. Dep't of Labor,* 954 F.2d 634, 636 (11th Cir.1992), *reh'g denied,* 961 F.2d 224, we affirm the decision of the district court that it had

jurisdiction, but on the ground that it had diversity jurisdiction. Contrary to Loyola's argument that as a federally chartered corporation it is not a citizen of any state for diversity purposes, the facts here make applicable the rule's exception allowing a corporation to be considered a citizen of one state for diversity purposes if the corporation's activities are "localized" in that state, despite some out-of-state business activities. The activities do not have to be 100% localized in order to trigger this exception.

Loyola is a corporation chartered pursuant to federal law, 12 U.S.C. §§ 1461 *et seq.* It would not be a citizen of any state for diversity purposes and diversity jurisdiction would not exist unless the corporation's activities were sufficiently "localized" in one state. *Westcap Government Securities, Inc. v. Homestead Air Force Base Federal Credit Union,* 697 F.2d 911, 911-12 n. 1 (11th Cir.1983), citing *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union,* 272 F.2d 453 (3d Cir.1959). In *Feuchtwanger* the credit union in question restricted its operations to one particular community within the state of New Jersey. *Feuchtwanger* found localization and, thus, diversity. However, in correctly noting that there has been little discussion of this issue in this Circuit, the district court felt constrained in extending its analysis past those facts found in *Feuchtwanger.* We believe that this is too restrictive an application of the localization test. The court in *Feuchtwanger* demonstrated a similar thought when it said, "[t]hus, for the future, localization less extreme than we have in this case will suffice to establish corporate citizenship

in the administration of diversity jurisdiction." *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union,* 272 F.2d at 456.

Determining whether a federal corporation is localized for diversity purposes should not be simply a question as to whether that corporation's activities are exclusive to one state. Such an evaluation should involve a more expansive investigation into the corporation's business. A variety of factors are relevant to this inquiry, such as the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature. *See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 624 F.Supp. 858, 860-61 (E.D.Pa.1985), *aff'd,* 819 F.2d 434 (3d Cir.1987); *Waldron Midway Enterprises, Inc. v. Coast Federal Bank,* 1992 WL 81724 at 1 (E.D.N.Y. Apr. 10, 1992).

This more expansive approach comports with diversity jurisdiction's purpose of avoiding any possible bias favoring the party from the state in which the state court proceeding is brought. *See Barrow S.S. Co. v. Kane,* 170 U.S. 100, 111, 18 S.Ct. 1526, 530, 42 L.Ed. 964 (1898); *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union,* 272 F.2d at 455 ("local bias in favor of local persons and institutions in controversies with strangers, a principal justification for diversity jurisdiction, is more likely to be present in the case of a corporation thus localized in fact than one which is connected with the state only in the formal sense of having been incorporated there.").

At the time of suit, Loyola's activities were amply localized

in Maryland for diversity purposes. Loyola's principal place of business was located in Maryland. All but one of its thirty-one branch offices were located in Maryland. Over two-thirds of its residential mortgages were located in Maryland. Two-thirds of the loans that it serviced were secured with property located in Maryland. For loans it serviced secured by property outside Maryland, payments were made in Maryland. The amount in controversy here exceeds $50,000. Fickling is a citizen of Georgia. Loyola, through its localized activities, is a citizen of Maryland. Diversity jurisdiction is established.

Although this decision resolves all the jurisdictional issues in this case, in the alternative, we would agree with the district court that it had jurisdiction to enter the judgments appealed from on the ground that it had federal question jurisdiction and pendent jurisdiction of the state claims, as analyzed in the district court's order of August 23, 1993. *Loyola Federal Savings & Loan Association v. Fickling,* 783 F.Supp. 620 (M.D.Ga.1992).

### *Subrogation*

The critical question on the judgment in favor of Fickling, as a subrogee to First Union's cause of action for Loyola's misrepresentation in inducing the First Union loans, is the effect of the knowledge with which the court charged Fickling as to his direct claims. The court set aside jury verdicts for Fickling on his personal claims for fraud and negligent communication on the ground that the evidence compelled the conclusion that Fickling should have been aware of the facts about the financial condition of his own partnership that he accused Loyola of concealing from

him. The court did not, however, bar Fickling's recovery as a subrogee because of that evidence. This may seem paradoxical, but careful examination of the facts demonstrates that this anomaly is facial, and the district court's decision in this regard is correct.

The district court ruled that Fickling cannot recover on his personal claims because he knew, or should have known, all that he complains Loyola failed to disclose to him. In contrast, First Union had no knowledge of the information that it inquired of Loyola. Fickling's knowledge of some of these facts is wholly irrelevant to First Union's claim, since there is no reason to impute to First Union what Fickling may have known. Since Fickling guaranteed the line of credit and paid the loans, he stands in the position of First Union to recover against Loyola for misrepresentation. Thus, even if Fickling were prevented as a creditor from making a claim due to his unique knowledge, Fickling as a guarantor is not so hindered because a guarantor has no fewer and no greater rights than the creditor for whom the guarantee is provided—in this case First Union. *Travelers Ins. Co. v. Commercial Union Ins. Co.,* 176 Ga.App. 305, 308, 335 S.E.2d 681, 683 (1985), *cert. denied.* Therefore, Fickling as guarantor is entitled to no fewer rights than if the guarantor were a stranger.

Contrary to Loyola's argument on appeal, there was sufficient evidence to support the jury's decision that Loyola misled First Union. First Union was not charged with any knowledge that Fickling might have. The evidence indicates that First Union made inquiries of Loyola concerning the state of Ocean Forest and

Loyola's commitment thereto. Loyola's responses to these inquiries were material in First Union's decision to extend the line of credit to Ocean Forest, even with Fickling's guarantee. Loyola failed to inform First Union of delinquent interest payments, Loyola's consideration of the loan for default and acceleration and Loyola's earlier refusal to extend additional credit to the project. The jury could properly conclude that this evidence supported a finding that Loyola misled First Union. Once Loyola agreed to respond to First Union's requests regarding Ocean Forest, Loyola was under a duty to be forthcoming and not omit intrinsic material facts unknown to and not reasonably discoverable by First Union. *Southern Intermodal Logistics v. Smith & Kelly Co.,* 190 Ga.App. 584, 585, 379 S.E.2d 612, 614 (1989).

Moreover, some of the facts undisclosed to First Union were, in fact, beyond Fickling's knowledge, such as Loyola's recommendation of foreclosure and Loyola's decision to violate its own underwriting standards. Thus, despite Fickling's inability to make a direct claim against Loyola, First Union's separate and distinct claim remains solid.

### *"Double Recovery"*

The jury granted Fickling full recovery on the guarantee claim through subrogation because the line of credit would not have been issued without Loyola's misrepresentations. Fickling, nevertheless, immediately received $520,000 from the proceeds of the First Union loan. If the loan had never been made, the evidence indicates that Ocean Forest would not have paid Fickling the $520,000 that he previously loaned or contributed to Ocean

Forest. Consequently, as a matter of law, Fickling has failed to prove this amount in damages, and the jury's award must be reduced by that amount so that Fickling will not recover for damages he did not incur. *See, e.g., Sea-Land Services, Inc., v. Gaudet,* 414 U.S. 573, 591 n. 29, 94 S.Ct. 806, 818 n. 29, 39 L.Ed.2d 9 (1974) (double recovery for tort not allowed), *reh'g denied,* 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883; *Trice v. Wilson,* 113 Ga.App. 715, 721, 149 S.E.2d 530, 535 (1966) (same).

### *Breach of Fiduciary Duty*

In exchange for Ocean Forest's general partner's agreement not to object to Loyola's foreclosure on Ocean Forest, Loyola released Friedman from his personal guarantees and agreed to pay $430,000 of the partnership's debt to certain creditors. Unlike Friedman, however, Fickling received no consideration for the release of the partnership's interest. The jury's determination that this constituted a breach of fiduciary duty that Friedman owed Fickling, and that Loyola assisted in this breach, is sufficiently supported by the evidence. The jury could find that Fickling, as 50% owner of the partnership, was entitled to one-half of the $430,000 Loyola paid to Friedman.

### *Loyola's Complaint on Fickling's Guaranty*

We affirm the district court's summary judgment in favor of defendant Fickling on Loyola's original complaint. The evidence, as argued in the briefs, indicates that the loan documents were indeed materially altered. Contrary to Loyola's argument, those who changed the agreement had no authority from Fickling to do so. There is no evidence from which a jury could find that Fickling

could be held responsible for these alterations.

## *Fickling's Counterclaims*

Since the outcome of Fickling's securities and personal claims would in no way affect the amount of Fickling's recovery, other than to indicate whether there were alternate grounds for recovery, these issues raised on cross-appeal are dismissed as moot.

## *Conclusion*

We AFFIRM the finding of subject matter jurisdiction, and all of the district court's award except that the total award is to be reduced by $520,000 to prevent "double recovery," or, more precisely, recovery for damages which Fickling did not incur. We VACATE AND REMAND the judgment for modification in this regard. We DISMISS as moot Fickling's claims on cross-appeal.

AFFIRMED IN PART, DISMISSED IN PART, VACATED IN PART, AND REMANDED.