**ICELAND SEAFOOD CORPORATION,**
Plaintiff,

v.

**NATIONAL CONSUMER COOPERA-TIVE BANK d/b/a/ National Cooperative Bank, Defendant.**

No. 4:03CV98.

United States District Court,
E.D. Virginia,
Newport News Division.

Oct. 3, 2003.

Dean T. Buckius, Vandeventer Black LLP, Norfolk, VA, for Plaintiff.

John S. Wilson, Daniel T. Campbell, Willcox & Savage PC, Norfolk, VA, for Defendant.

### *ORDER*

FRIEDMAN, District Judge.

Pending before the court is plaintiff Iceland Seafood Corporation's Motion for Remand and Award of Fees and Costs, filed on August 19, 2003. The defendant, National Consumer Cooperative Bank, filed its Brief in Opposition on September 2, 2003, and the plaintiff responded in a Reply Memorandum on September 5, 2003. The court has considered the briefs submitted by the parties and, finding that a hearing would not aid in the court's resolution of the issues, **DENIES** the parties' request for a hearing on this matter. For the reasons articulated fully below, the court **GRANTS** the plaintiff's Motion for Remand, and **ORDERS** this case remanded to the Circuit Court for the City of Newport News, Virginia. The plaintiff's

Motion for Award of Fees and Costs is **DENIED**.

### I. Procedural and Factual History

On June 12, 2003, the plaintiff filed a Bill of Complaint in the Circuit Court for the City of Newport News, Virginia, alleging breach of contract and other issues stemming from the plaintiff's relationship with the defendant. The defendant was served through the Secretary of the Commonwealth, via certified mail, on July 9, 2003. On July 25, 2003, within the thirty (30) days provided for under 28 U.S.C. § 1446(b), the defendant filed a Notice of Removal to federal court. As grounds for removal, the defendant claimed diversity of citizenship, averring that the plaintiff is a Pennsylvania corporation, with its principal place of business in Newport News, Virginia, and that the defendant is a federally organized corporation, with its principal place of business in Washington, D.C. The defendant further averred that it is a non-resident of Virginia.

Plaintiff's Motion to Remand argues that this court does not have diversity jurisdiction over this matter, as the defendant, being a federally chartered corporation, has national citizenship. Defendant's Brief in Opposition argues that this court does have subject matter jurisdiction, on both diversity and federal question grounds, and that the case was properly removed.

The defendant invites this court, however, to postpone its consideration of the issue of remand until it considers the issue of personal jurisdiction raised in defendant's First Amended Answer and Counterclaim on August 21, 2003. The defendant has also raised the issue of personal jurisdiction in a Motion for Judgment on the Pleadings, filed on September 11, 2003. The plaintiff filed its response to this on September 25, 2003. The parties have also exchanged motions concerning a motion by

the plaintiff to dismiss defendant's counterclaim.

While the court recognizes that it is not prohibited from addressing the possibly less onerous question of personal jurisdiction first, the court believes that "both expedition and sensitivity to state courts' coequal stature" impels the court to first consider whether it has authority over the "category of claim in suit." *See Ruhrgas, AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 588, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (finding that it was not abuse of discretion for district court to first consider personal jurisdiction challenge when subject matter jurisdiction challenge was difficult, but noting that district courts customarily first resolve doubts over subject matter jurisdiction).

## II. Discussion

█ The issues presented in the Motion for Remand, while perhaps not novel, are not of the typical variety raised in removal proceedings. The court must determine if the defendant, a federally chartered corporation, can claim diversity jurisdiction based on its citizenship. In its Brief in Opposition, the defendant has also argued that its organizing statute provides for an independent grant of federal jurisdiction, thus allowing removal of any actions brought in the state courts on this basis. Before the court addresses this argument, however, it must, as an initial matter, determine whether the defendant may amend its Notice of Removal to include this ground.

█ At the outset, the court recognizes that there exists a policy of strictly construing the removal statute, particularly when based upon diversity grounds. *See Thompson v. Gillen,* 491 F.Supp. 24, 26 (E.D.Va.1980). This policy is intended to secure state sovereignty by not removing cases that properly belong in state court. Any doubts as to the propriety of the removal are to be resolved in favor of

remand to state court. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Creekmore v. Food Lion Inc.,* 797 F.Supp. 505, 508 (E.D.Va.1992). Additionally, the party seeking removal bears the burden of establishing federal jurisdiction. *See Mulcahey v. Columbia Organic Chem. Co.,* 29 F.3d 148, 151 (4th Cir.1994).

### A. Diversity Jurisdiction

In its Notice of Removal, the defendant claimed that this court has original jurisdiction over this matter because of diversity jurisdiction, which requires that the matter in controversy exceed $75,000 and be between citizens of different states. 28 U.S.C. § 1332(a). The citizenship provision relating to corporations, section 1332(c), was added by amendment in 1958. It provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The purpose of this amendment was to reduce the number of cases, involving corporations, brought in the federal courts by making it more difficult for corporations to attain complete diversity. *See Burton v. United States Olympic Comm.,* 574 F.Supp. 517, 519 (C.D.Cal.1983) (citations omitted).

There is no dispute concerning the amount in controversy, nor in determining the plaintiff's citizenship. At issue, then, is the citizenship of the defendant. As is discussed below, the typical test for determining the citizenship of a corporation does not apply to federally chartered corporations.

The National Consumer Cooperative Bank ("NCB") was created by Congress in 1978 for the purpose of making available "necessary financial and technical assistance to cooperative self-help endeavors as

a means of strengthening the Nation's economy." 12 U.S.C. § 3001; *see also* 12 U.S.C. 3001–3051 ("the Bank Act"). The Bank Act provides that "[t]he principal office of the Bank shall be in Washington, District of Columbia, and, for the purpose of venue, shall be considered a resident thereof." 12 U.S.C. § 3011. Until 1981, when Congress privatized NCB, its Class A stock was owned entirely by the United States. Accordingly, pursuant to 28 U.S.C. § 1349, the federal courts had jurisdiction over NCB during these first three years. There was, thus, no need for Congress to address diversity jurisdiction when NCB was covered under 28 U.S.C. § 1349. NCB first argues that the venue provision in 12 U.S.C. § 3011 reveals the anticipation of Congress that NCB would have a federal forum available to it, even absent the federal jurisdiction afforded by 28 U.S.C. § 1349.

■ The court rejects the suggestion that venue is equivalent to citizenship for the purposes of jurisdiction. *See Monsanto Company v. Tennessee Valley Authority,* 448 F.Supp. 648, 650 (N.D.Ala.1978) (finding that statutes that created federally chartered corporation and established venue situs did not serve to confer citizenship in same situs for purposes of diversity jurisdiction.) Principal office, as used in the chartering statutes, is not the same as principal place of business as used in determining jurisdiction. *Id.* Accordingly, the venue provision of the chartering statutes does not suffice to establish citizenship for NCB in the District of Columbia.

■ The citizenship of a federally chartered corporation is determined by the express language of the chartering statutes and the geographic scope of activities authorized in those statutes. *See Bankers' Trust Co. v. Texas Pacific Rw. Co.,* 241 U.S. 295, 308–309, 36 S.Ct. 569, 60 L.Ed. 1010 (1916); *Little League Baseball v. Welsh Publishing Group, Inc.,* 874 F.Supp.

648, 651 (M.D.Pa.1995); *Burton v. United States Olympic Committee,* 574 F.Supp. 517, 519 (C.D.Cal.1983). If the chartering statutes expressly provide for citizenship in a particular state, or incorporate the entity as a "body corporate" of a particular state, then a federally chartered corporation, even with wide spread actual and authorized activities, may have state citizenship for diversity purposes. *Little League,* 874 F.Supp. at 651. There is no disagreement that the Bank Act does not contain any such language locating NCB in the District of Columbia.

■ If this express provision is absent from the statutes, however, a federally chartered corporation may still be a citizen of a particular state if its activities, either factually or by charter, are limited to a particular state. *Burton,* 574 F.Supp. at 517, 519 (citing *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union,* 272 F.2d 453, 454–456 (3d Cir.1959)). Otherwise, if the corporation is organized to do business in several states, and in fact does so, it has national citizenship and cannot base removal on the ground of diversity jurisdiction. *Id.* (citing *Bankers' Trust,* 241 U.S. at 309, 36 S.Ct. 569).

■ Courts that have considered the question of the citizenship of a federally chartered corporation inquire into whether the corporation's activities can be said to be "localized." *Little League,* 874 F.Supp. at 652; *Burton,* 574 F.Supp. at 519. Unlike the test for a state corporation, which compares the operations of the corporation in various states to determine in which state those operations are most concentrated and, thus, where the principal place of business lies, "the test for federal corporations is not a comparison but an examination of whether or not the corporation conducts its activities over a widespread area." *Little League,* 874 F.Supp. at 653.

To this end, "activities" are those exercises of corporate powers, undertaken by the federally chartered corporation, for the purposes set forth in the corporation's chartering statutes. *Id.* at 654. Activities are not limited to the "operations" of a corporation, as must be examined for determining principal place of business, which include such exercises as conducting business, owning property and hiring powers. *Id.* at 653. Activities may include a wider range of conduct, because they encompass any exercise of powers authorized in the chartering statutes to fulfill the purposes of those statutes. *Id.* at 654.

*Little League* considered whether plaintiff Little League Baseball, Inc., a federally chartered corporation, was localized in Pennsylvania. The court looked first to the chartering statutes and recognized that Little League was authorized to conduct activities throughout the United States. *Little League,* 874 F.Supp. at 652. The court found that the sole remaining question was whether the activities of Little League were confined within the Commonwealth of Pennsylvania, such that Little League could be considered "localized." Though it was undisputed by the parties that the principal offices, land and facilities owned by Little League were located in South Williamsport, Pennsylvania, that the Little League World Series was often held there, and that the majority of daily operations were carried out there, the court found that Little League was not localized. *Id.* at 655. The court looked to the powers authorized in the chartering statutes, and examined where those powers were executed. *Id.* at 654. Recognizing that the corporation was granted powers to hire employees, enter into contracts, collect money, and own personalty and realty, and that the corporation did exercise these powers outside of Pennsylvania, the court deemed Little League a national citizen and not amenable to diversity jurisdiction. *Id.* at 654, 655.

In *Burton,* the court considered the citizenship of the United States Olympic Committee ("the USOC"). First, in looking to the terms of the chartering statutes, the court recognized that it was the expectation of Congress that the USOC conduct its business throughout the United States. *Burton,* 574 F.Supp. at 521. Although both parties acknowledged that the USOC's principal place of business was in Colorado, the court found that, due to the federally chartered nature of the USOC, this stipulation did not resolve the jurisdictional question. *Id.* at 518. The court found that the USOC was authorized to do business throughout the United States and, in fact, did so. That the USOC conducted its daily operations solely in Colorado, owned no property outside of Colorado, and paid taxes solely in Colorado, did not serve to establish localization. *Id.* at 522 n. 7. The court found that "localization requires confinement of activities, either by charter or in fact, to a single state." *Id.* Accordingly, the court held that it did not have jurisdiction over the USOC.

Localization of activities may not require that a federally chartered corporation conduct all of its activities in a single state. *See Loyola Federal Savings Bank v. Fickling,* 58 F.3d 603, 606 (11th Cir.1995). The Eleventh Circuit, in *Loyola* took a more expansive approach to localization, and did not limit its inquiry into whether the federally chartered corporation's activities were exclusive to one state. *Id.* at 606. The court looked to a number of factors, including "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature." *Id.* In so doing, the court found that the plaintiff, a federal savings bank, was localized as the overwhelming majority of its branch offices, residential mortgages and secured

property were located in the state of Maryland. *Id.*

It is the *Loyola* approach that NCB would have this court take. In arguing that its activities are localized in the District of Columbia, NCB maintains that its principal place of business is in the District, that all of its corporate, financial and loan records are kept there, as are all of its executive officers, department heads and 97 percent of its employees, and that its loan agreements specify that District of Columbia law governs. NCB urges the court to recognize a difference between where its customers are located and where NCB conducts its business. Drawing on the provisions of the Model Business Corporation Act, which indicate that creating security interests or acquiring indebtedness does not constitute "transacting business," NCB argues that the court ought not consider the geographic scope of these transactions for the purposes of determining whether NCB's activities are, in fact, "localized." *See* Model Bus. Corp. Act §§ 15.01(b)(7), (8). NCB admits that it has branch offices in New York, Alaska and California, although only the California office has more than one employee.

Plaintiff responds that NCB, through its making of loans and providing other financial services to cooperatives, conducts business activities throughout the United States. Furthermore, NCB's fifteen member board hails from throughout the nation, and the various branch offices provide nationwide service to customers. Plaintiff argues that the "transacting business" test of the Model Act applies only to the question of whether the corporation's contacts within a state require it to obtain a certificate of authority to do business. *See id.* at § 1501 (Official Comment).

In applying the localization analysis herein described, and bearing in mind that it is the defendant's burden to establish federal jurisdiction, the court finds that NCB is not localized in the District of Columbia. The congressional statement of purpose, contained in the chartering statutes, provides that NCB was established in order to assist user-owned cooperatives, on a nationwide basis, "as a means of strengthening the nations economy." 12 U.S.C. § 3001. To this end, NCB is authorized to "make loans and offer its services throughout the United States, its territories and possessions, and in the Commonwealth of Puerto Rico." 12 U.S.C. § 3011. The chartering statutes authorize the use of broad corporate powers to complete these objectives, and are not limited to the District of Columbia. Among them, NCB may enter into contracts, acquire property, establish branch offices, issue certificates of indebtedness, and sue or be sued in any court, state or federal. *See* 12 U.S.C. § 3012. Thus, it is apparent that Congress authorized NCB to conduct its activities beyond the District of Columbia. The court must now determine if, in fact, it does so. *See Little League,* 874 F.Supp. at 651, 655; *Burton,* 574 F.Supp. at 522.

This involves no arduous inquiry. Even if the court utilizes the less restrictive test articulated by the Eleventh Circuit in *Loyola,* it is clear that NCB's activities are not localized in the District. Activities, as discussed *supra,* are not the same as operations in making the citizenship determination. *See Little League,* 874 F.Supp. at 654. In fulfilling its congressionally mandated purpose, NCB made loans to cooperatives in New Jersey, New York, California, Michigan, and Pennsylvania in 2002 alone, according to its annual report. That these loans may not constitute business transactions for the purposes of the Model Act does not preclude their consideration as activities in the broader reaching localization analysis. *Id.* at 654.

In considering the factors important to the court's finding of localization in *Loyola,* although NCB's principal place of business

is in the District, it has several branch offices throughout the nation. Its loan making activities are clearly national in scope, and its secured collateral is similarly disbursed. *See Loyola,* 58 F.3d at 606 (finding that one factor in favor of localization was presence of majority of secured property within one state). Furthermore, in its Annual Report, NCB holds itself out to cooperatives as a financing entity with nationwide resources and coverage.

This finding is in line with the decisions of other courts that have considered this issue. In addition to Little League Baseball and the USOC, courts have found that the following entities have national citizenship: the Federal Deposit Insurance Corporation; the Federal Savings and Loan Insurance Corporation; the American Legion; the Disabled American Veterans; the Tennessee Valley Authority; and the Veterans of Foreign Wars. *See Little League,* 874 F.Supp. at 651 (citing cases).

Those courts that have determined that certain federally chartered corporations are localized have done so on the basis of either a specific chartering statute conferring citizenship in a particular state, or from the obviously localized nature of the corporation's activities. *See Burton,* 574 F.Supp. at 521 (citing cases). The court notes that the cases cited by the defendant for this proposition all involve federal banks or loan associations bearing the name of a particular state or region, and all having a corresponding scope of activity. This is not the case with NCB. Accordingly, the court finds that because NCB's chartering statute authorizes nationwide activities, actually engaged in by NCB, state citizenship is lacking and diversity jurisdiction cannot be conferred.

B. Original Jurisdiction as Authorized by Statute.

 In its Brief in Opposition to Plaintiff's Motion to Remand, NCB argues that there exists an independent statutory basis for federal jurisdiction. The statute setting out NCB's general corporate powers provides that NCB may "sue or be sued in its corporate name and complain and defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 3012(6). NCB argues that the Supreme Court, in *American Nat'l Red Cross v. S.G.,* 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), has held that a congressional charter's "sue and be sued" provision, if referring explicitly to the federal courts, serves as an independent grant of federal jurisdiction for a federally chartered corporation. *Id.* at 255, 112 S.Ct. 2465.

This is an argument for federal jurisdiction that NCB failed to raise in its earlier filed Notice of Removal. The plaintiff has objected on this basis, and also argued that the holding of *American Nat'l Red Cross* does not apply to the chartering statute at issue. Before the court can consider this additional font of federal jurisdiction, however, it is necessary to determine whether the defendant can amend its Notice of Removal following the expiration of the 30–day removal period.

C. Time for Removal

Section 1446(b) requires that a defendant file a notice of removal within thirty (30) days after service of process, "setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). Courts in this district have generally adopted a strict construction of the general rule that "allegations of jurisdiction imperfectly stated in the original petition for removal may be amended even after expiration of the 30–day removal period, whereas 'missing allegations may not be supplied nor new allegations furnished.'" *Richmond, F. & P.R. Co. v. Intermodal Services, Inc.,* 508 F.Supp.

804, 805 (E.D.Va.1981) (quoting *Thompson v. Gillen,* 491 F.Supp. 24, 27 (E.D.Va. 1980)); *see also Outdoor World Corp. v. Calvert,* 618 F.Supp. 446, 448 (E.D.Va. 1985).

A more liberal approach allows for amendments after this 30–day period "where jurisdiction is alleged in a conclusory fashion or where some allegations, such as principal place of business, but not all other necessary specifics are absent." *Richmond,* 508 F.Supp. at 805. Many of the cases that discuss the amendment of grounds for jurisdiction involve a missing or incomplete allegation necessary for diversity. The courts that adhere to the strict constructionist view do so, in part, because removal is in derogation of state sovereignty. *Id.* at 807.

■■■ The particular standard to be applied need not detain the court long because, even under the more liberal view, an allegation of jurisdiction entirely absent from the Notice of Removal may not be supplied outside of the 30–day period. *See Tincher v. Insurance Company of the State of Pennsylvania,* 268 F.Supp.2d 666, 668 (E.D.Va.2003) (finding that failure to raise fraudulent joinder in Notice of Removal precluded court from considering issue as raised in later brief). The court is also not deterred by the fact that NCB's new ground for removal is an independent grant of federal jurisdiction, as the removal statutes do not distinguish between federal question and diversity jurisdiction. *See Aguiar v. Evans,* 607 F.Supp. 1418, 1420 (E.D.Va.1985). Other policy considerations underlying the reluctance to consider missing allegations include the simplicity of drafting the allegations, the removal of uncertainty in marginal cases, and the statutorily prescribed 30–day period. *Richmond,* 508 F.Supp. at 806–807. These considerations apply equally to removal based upon an independent grant of federal jurisdiction.

NCB admits that it was not aware of the Supreme Court's holding in *American Nat'l Red Cross,* until after plaintiff had moved to remand. While this is unfortunate, section 1446(b) "is a statute of repose requiring prompt resolution of the right of removal so that the trial of the lawsuit is not unduly delayed." *Richmond,* 508 F.Supp. at 807. Accordingly, the court finds that NCB cannot amend its Notice of Removal by supplying a missing allegation outside of the 30–day period established in section 1446(b).

### D. Costs and Fees

■■■ Plaintiff also requests that the court award fees and costs in this matter. Such an award must be predicated upon a finding of bad faith on the part of NCB in removing the case from state court. *ITT Industrial Credit Co. v. Durango Crushers, Inc.,* 832 F.2d 307, 308 (4th Cir.1987). The court finds no bad faith in NCB's attempt to remove this case based upon diversity jurisdiction. NCB had relied successfully on diversity jurisdiction in past cases, a fact that apparently caused it to overlook another ground for jurisdiction in its Notice of Removal in this case. Furthermore, NCB may have had a proper basis for jurisdiction, had it alleged the independent grant of federal jurisdiction in its Notice of Removal. Therefore, the motion for costs and attorneys' fees is denied. *See Tincher,* 268 F.Supp.2d at 668.

### III. Conclusion

For the aforementioned reasons, the plaintiff's Motion to Remand is **GRANTED,** and this case is **ORDERED** remanded to the Circuit Court for the City of Newport News, Virginia. Plaintiff's Motion for Award of Fees and Costs is **DENIED.** The request of the parties for a hearing is **DENIED.**

The Clerk is **REQUESTED** to mail copies of this Order to counsel for all parties.

**IT IS SO ORDERED.**