AURIEMMA CONSULTING GROUP, INC. Plaintiff,

v.

UNIVERSAL SAVINGS BANK, F.A. Defendant.

No. CV 04–5338.

United States District Court, E.D. New York.

April 28, 2005.

---

Jones Day, By Thomas E. Lynch, Esq., New York City, for Plaintiff.

Sills Cummis Epstein & Gross, P.C. by S. Loryn P. Riggiola, Esq., New York City, for Defendant.

WEXLER, District Judge.

This is a breach of contract action that was removed from the Supreme Court of the State of New York, County of Nassau. Federal jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1332, on the ground that there is diversity of citizenship between the parties. Presently before the court is the motion of Plaintiff to remand this case on the ground that the parties are not diverse.

## BACKGROUND

### I. The Complaint, the Allegations of Diversity and the Motion to Dismiss

Plaintiff Auriemma Consulting Group, Inc. ("Auriemma" or "Plaintiff") is a consulting company that entered into a contract with Defendant Universal Savings Bank, F.A. ("USB"). According to the complaint, USB breached its contract with Auriemma when USB failed to pay Auriemma commissions allegedly earned in connection with USB's sale of certain loans.

Auriemma is incorporated pursuant to the laws of the State of New York and maintains its principal place of business within the Eastern District of New York. USB is a federally chartered bank that is headquartered in Milwaukee, Wisconsin. USB alleges that diversity of citizenship exists because it is a citizen only of the State of Wisconsin and Plaintiff is a citizen of the State of New York.

While there is no dispute as to the citizenship of Plaintiff, the core of the present dispute is the citizenship of USB. If USB is a citizen only of the State of Wisconsin, diversity exists and the motion to remand fails. If, on the other hand, USB's status as a federally chartered bank renders it only a national citizen, diversity is not present and the case must be returned to state court. After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

### I. Legal Principles

As the party seeking to invoke federal jurisdiction, USB bears the burden of showing that removal was proper. *Sterling Fifth Assoc. v. Carpentile Corp., Inc.,* 2003 WL 22227960 *1 (S.D.N.Y.2003); *Miller v. First Security Investments, Inc.,* 30 F.Supp.2d. 347, 350 (E.D.N.Y.1998).

Federalism and the limited jurisdiction of federal courts require that the removal statute be strictly construed and that all doubts be resolved in favor of remand. *Sterling*, 2003 WL 22227960 at *1; *Miller*, 30 F.Supp.2d. at 350; *see Romanella v. Hayward*, 114 F.3d 15, 16 (2d Cir.1997); *Casul v. Modell's N.Y. II. Inc.*, 2004 WL 2202581 *2 (S.D.N.Y.2004).

■ As noted above, USB is a federally chartered bank. The general rule with respect to such institutions is that the corporation is not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship. *Waldron v. Midway Enters., Inc. Coast Federal Bank*, 1992 WL 81724 *1 (E.D.N.Y.1992); *Iceland Seafood Corp. v. National Consumer Cooperative Bank*, 285 F.Supp.2d 719, 723 (E.D.Va.2003). A limited exception to this rule exists if the corporation's activities are "localized" within a single state. *Waldron*, 1992 WL 81724 at *1. In such a case, the corporation will be deemed a citizen of that state. On the other hand, where a federally chartered institution does business in several states, it will be deemed to have only national citizenship. *Petrousky v. Civil Air Patrol, Inc.*, 1998 WL 213726 *2 (N.D.N.Y.1998).

The seminal case establishing the "localization" exception to the rule of national citizenship was decided in 1959 by the Third Circuit Court of Appeals in *Feuchtwanger v. Lake Hiawatha Credit Union*, 272 F.2d 453 (3d Cir.1959). There, the defendant credit union was held to be a citizen only of the State of New Jersey for diversity purposes. Notable in that case was the fact that defendant's federal charter limited its business to New Jersey. *Feuchtwanger*, 272 F.2d at 454. Thus, there was no question that defendant did business in only one state.

The *Feuchtwanger* court noted that a charter business limitation to a single state was not necessarily required to find citizenship of a federally chartered institution in a specific state. Despite the court's recognition that the "principle aim" of legislation reflecting citizenship for diversity purposes is to "restrict federal jurisdiction," it held that "for the future, localizations less extreme than we have in this case will suffice to establish corporate citizenship in the administration of diversity jurisdiction." *Feuchtwanger*, 272 F.2d at 456.

While the Second Circuit has not spoken on this issue, courts adopting the *Feuchtwanger* analysis have looked to a variety of factors to determine whether a federally chartered bank's activities are sufficiently localized so that it may be deemed a citizen of a single state for diversity purposes. Those factors include the corporation's principle place of business, the location of branch offices, the volume of business transacted in different states and "any other evidence that tends to show the local or national nature of the corporation's plans and operations." *Waldron*, 1992 WL 81724 *1; *accord Loyola Federal Savings Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir.1995) (applying same factors).

Application of these factors led to a finding of localization, in *Waldron*, for example, where the defendant bank maintained no out-of-state branch offices, originated most of its loans on single family in-state residences, targeted its business activities to a single state and out-of-state loans accounted for less that five percent of the bank's business. *See Waldron*, 1992 WL 81724 at *2. Localization was also held to exist in *Loyola*, where thirty of the plaintiff bank's thirty one branches were located in one state and two-thirds of the bank's residential mortgages and loans it serviced were secured by in-state properties. *Loyola*, 58 F.3d at 606.

Localization was held not established, on the other hand, in *Iceland Seafood*, where the defendant bank's charter authorized nationwide business activities and the bank made loans to entities in at least five states. Holding that single state citizenship did not exist, the court noted that the bank's activities "are clearly national in scope and its secured collateral is similarly disbursed." *Iceland Seafood*, 285 F.Supp.2d at 726. National citizenship only existed despite the facts that the bank maintained all of its financial and loan records in a single location which was also where the offices of its executive officers, department heads and 97% of its employees were located. *Iceland Seafood*, 285 F.Supp.2d at 725.

## II. *Disposition of Motion*

The parties have submitted affidavits in support of their respective positions. Also before the court is information set forth in USB's website. USB makes no indication that the information contained in its website is, in any way, inaccurate. The undisputed facts relevant to this motion are as follows.

USB has maintained its headquarters for approximately twenty years in the State of Wisconsin. The Wisconsin office is home to USB's parent company as well as fifty USB employees. The office is described by USB's Executive Vice President and Chief Administrative Officer as the location of the bank's administrative offices and central accounting functions. USB states that all funds from deposits are ultimately deposited at USB's local Wisconsin office and that all loans are funded by that office. Board meetings are held in the Wisconsin office and four of USB's five corporate directors reside in the State of Wisconsin.

USB notes that it maintains two retail branch offices, one of which is located in the State of Michigan. USB downplays

the significance of this office, describing its operations as "inactive" and states that this branch "serves merely as the operations and customer support center for USB's credit card business."

Noticeably absent from USB's submission are facts set forth by Auriemma as stated in USB's charter as well as on its website. First, Auriemma correctly points out that the purpose set forth in USB's charter is broad and in no way limits the bank's activities to a single state. More importantly, USB's website states that the bank maintains administrative offices in California and Arizona, in addition to those located in Wisconsin and Michigan. Through its website, USB solicits business throughout the country. Mortgages and credit cards applications can be processed on line. Auriemma has submitted information stating that the majority of USB's credit card customers (54.4%) are located out of state with only 2.5% of those customers located within the State of Wisconsin. USB's submission was silent on this issue. In short, USB's website makes perfectly clear that the bank intends to exercise the full powers granted by its charter and to do business on a nationwide basis. There is, of course, nothing wrong with this. It does, however, support a finding that USB's business is not so localized as to make it a citizen only of the State of Wisconsin and leads to the legal conclusion that for purposes of the diversity statute, USB is to be considered only a national citizen.

■ Upon consideration of the parties' submissions and in view of the facts that: (1) USB bears the burden of proving localization and (2) all doubts are to be resolved in favor of remand, the court has little difficulty holding that USB is a national citizen only and therefore cannot invoke this court's diversity jurisdiction. Unlike those cases where localization has been

held, there is no indication that USB has limited its business (or the majority of thereof) to the State of Wisconsin.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is granted. The Clerk of the Court is directed to terminate the motion, close this case and transfer the file in this matter back to the Supreme Court of the State of New York, County of Nassau.

SO ORDERED.